In the Matter of the Complaint of **CHINESE MARITIME TRUST, LTD.,** as Owner of **STEAMSHIP SIAN YUNG,** for Exoneration from or Limitation of Liability.

No. 71 Civ. 161.

United States District Court,
S. D. New York.
April 28, 1972.

Whitney North Seymour, Jr., U. S. Atty., by Louis Greco, Philip A. Berns, Warren A. Schneider, Frank A. Grundman, Dept. of Justice, New York City, for Panama Canal Co.

Hill Betts & Nash, New York City (David C. Wood and Mark M. Jaffe, New York City, of counsel) for Chinese Maritime Trust, Ltd.

Lord, Day & Lord, New York City (John F. O'Connell, New York City, of counsel) for Cargo claimant Republic of Vietnam.

MOTLEY, District Judge.

### Memorandum Opinion

The SS SIAN YUNG sank in the Panama Canal on December 6, 1970 and has remained there ever since. Its owner, Chinese Maritime Trust, Ltd., petitioned this Court on January 12, 1971 for exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 183–185, and 188 and Rule F of the Admiralty Rules. On January 18, 1971 Judge Cannella of this Court restrained the commencement or prosecution of all suits to recover damages for loss resulting from this casualty, and approved the owner's stipulation for value of $16,246.57. The cargo claimant, Republic of Vietnam, has claimed damages of approximately $1,600,000. Judge Cannella's order also required all parties with claims against the owners to file them in the limitation proceeding by March 2, 1971.

The Panama Canal Company, a government-owned corporation, now moves for a declaration that an action for the costs of removal of a wreck obstructing navigable waters of the Panama Canal Zone is not subject to the restraining order. Estimated costs of removal are given as $2,000,000.

The issue before this court is whether the Canal Company's claim for removal costs is subject to limitation and must therefore be included in the limitation proceeding at this stage, a question of first impression in this Circuit.[1]

The Canal Company's right of action arises under 35 C.F.R. § 117.5, which states:

*Control of wrecked, injured, or burning vessels.*

When a vessel in Canal Zone waters goes aground, or is wrecked, or is so injured that it is liable to become an obstruction in such waters, or is on fire, the Canal authorities shall have the right to supervise and direct, or to take complete charge of and conduct, all operations which may be necessary to float the vessel, to clear the wreckage, to remove the injured vessel to a safe location, or to extinguish the fire, as the case may be. The Canal authorities may, when necessary, take such action without awaiting the permission of the owner or agent of the vessel, and may require the master of the vessel and all persons under his supervision and control to place the vessel, and all equipment on board, at the disposal of the Canal authorities without cost to the Canal. Unless the Panama Canal Company is subsequently found and determined to be responsible for the accident or the condition necessitating action by the Canal authorities, the necessary expenses incurred by the Canal in carrying out the provisions of this section shall be a proper charge against such vessel, her owners and/or her operators.

A ship's owner can limit its liability for losses caused by the ship under 46 U.S.C. § 183 only if those losses were incurred "without the privity or knowledge of such owner or owners."[2] Liability for removal costs under § 117.5 arises from the obligation imposed by the regulation itself upon the shipowner to remove the wreck or pay for its removal by the Canal Company. This obligation came within the privity and knowledge of the ship's owner once it became aware that its vessel was obstructing navigation in the Panama Canal. In effect, the court holds that liability for expenses of the Canal Company in removing wrecks pursuant to 35 C.F.R. § 117 is in this case within the privity and knowledge of the owners, and therefore not subject to limitation, as a matter of law.[3]

In so doing, we follow the reasoning of In re Pacific Far East Line, Inc., 314 F.Supp. 1339, 1349 (N.D.Cal.1970), which held that an owner could not limit liability for wreck removal expenses imposed by the Rivers and Harbors Act (33 U.S.C. § 409). The Court stated: "the statutory duty to diligently remove

---

1. A similar question—whether removal costs arising under the Rivers and Harbors Act are subject to limitation—was expressly reserved by the Supreme Court in Wyandotte Transportation Co. v. United States, 389 U.S. 191, 205 n. 17, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). See also Comment, Removal of Obstructions from Navigable Waters, 48 N.C.L. Rev. 553, 566–72 (1970).

2. 46 U.S.C. § 183(a):
"The liability of the owner of any vessel . . . for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not . . . exceed the amount or value of the interest of [said] owner in such vessel, and her freight then pending."

3. This case thus differs from J. Ray McDermott & Co. v. Hunt Oil Co., 262 F.2d 127 (5th Cir. 1959) and In Matter of Petition of Panoceanic Tankers Corporation, 67 Civ. 4489 (S.D.N.Y. Jan. 12, 1969), where the question of privity and knowledge was a factual one to be determined in the limitation proceeding.

the wreck is a mandatory obligation personal to the owner and the failure to so remove is within the privity and knowledge of the owner." *Id.*

There is no indication in the Limitation of Liability Statute, first enacted in 1851, that the costs to the owner of removing the wreck of his vessel were to be limited. Nor does the background of the Rivers and Harbors Act, now construed to require shipowners to pay for removal, suggest an answer to this question.

 Two policies expressed in recent court rulings, however, point in the direction of our conclusion. First is the renewed vigor which the Supreme Court has read into the Rivers and Harbors Act, one of whose aims is to insure the prompt elimination of obstructions to navigation. United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960); Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). Second is the disfavor with which expansion of the limitation of liability statute is viewed. Maryland Casualty Co. v. Cushing, 347 U.S. 409, 437, 74 S.Ct. 608, 98 L.Ed. 806 (1954) (Black, J.); In re Barracuda Tanker Corporation, 409 F.2d 1013, 1015 (2d Cir. 1969). True, if the Canal Company presented its claim in the limitation proceeding it could still recover a full in personam judgment if its claim were later found not to be limitable. Hartford Accident & Indemnity Co. v. Southern Pac. Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612 (1924). But to paraphrase the Second Circuit in the *Barracuda Tanker* case, *supra*, it is hard to see how

it would foster the purposes of the limitation of liability statutes to delay the Canal Company in prosecuting its action for the costs of removing the SS SIAN YUNG from the Canal. We find it hard to believe that Congress' intent to promote investment in shipping extended to limiting the costs of removing obstructions to navigation. Courts in England have found that the function of their limitation statutes, which are similar to ours, would not be furthered by limiting costs for wreck removal.[4] See The Stonedale No. 1, [1954] 2 All. E. R. 170, aff'd [1955] 2 All. E. R. 689.

 Defendants contend that we should not at this juncture decide that the Canal Zone's claims are not limitable because negligence by the shipowners must be shown before they are liable for removal costs. This is true under § 15 of the Rivers and Harbors Act, *supra*, where the owners must pay for removal only if the vessel was negligently sunk. Wyandotte Transportation Co. v. United States, *supra*, 389 U.S., at 197 n. 6, 210, 88 S.Ct., at 384 n. 6, 390, 19 L.Ed.2d at 413 n. 6, 420.[5] Section 117.5 of the Canal Zone regulation does not by its terms make recovery contingent on proof that the vessel was negligently sunk, though the Canal Company seems to take the position that negligence is indeed one element of its case (Canal Company brief, at 8).

In the view we take of the case we need not now decide whether 35 C.F.R. 117.5, which has never been judicially interpreted, empowers recovery only where the owners or operators of the ship are negligent or whether the own-

---

4. Included in the sparse history of the limitation of shipowner's liability act of 1851, the forerunner of today's statute, is the following comment of Senator Hamlin, Chairman of the Senate Committee on Commerce, who introduced the bill: "Why not give those who navigate the ocean as many inducements to do so as England has done? . . . That is what this bill seeks to do and no more." Senator Davis said: "It is simply plac-

ing our mercantile marine upon the same footing as that of Great Britain." Quoted in Gilmore and Black, The Law of Admirality, 664 n. 5 (1957).

5. Section 15 of the Rivers and Harbors Act speaks of vessels "voluntarily or carelessly" sunk, 33 U.S.C. § 409, and the Government in *Wyandotte* was proceeding under a theory of negligence.

ers are absolutely liable for the costs of removing their vessel. We are not granting judgment for the Canal Company on its claim; we merely hold that if they do recover, that recovery is not limitable. If negligence is in fact an element of the Canal Company's case and is not proved, the owners are free to defend and prevail on that ground.

The same applies to the owners' contention that they are not liable under § 117.5 if the Canal Company is found responsible for the sinking. That section prevents the Canal Company from recovering costs if it is "found and determined to be responsible for the accident." In its affidavit Chinese Maritime Trust states that a Board of Local Inspectors in the Canal Zone, after holding an inquiry, found the Canal Company's pilot and certain of the vessel's crew at fault. This finding, we take it, is mentioned to imply that there is some likelihood the Canal Company will ultimately be found responsible for the accident. We are not deciding the merits of that defense now, and it remains available to Chinese Maritime Trust in the Canal Company's separate action.

Chinese Maritime Trust and the cargo claimant, the Republic of Vietnam, urge retention of the Canal Company's claim in the limitation proceeding on the further ground that common questions of fact will be presented in the limitation proceeding and in the action for removal costs. These parties point to possible inconsistencies in determination, as well as the inconvenience they will suffer by participating in proceedings here and in the Canal Zone.[6] Evidently the cargo claimant, Republic of Vietnam, intends to claim against the Canal Company for loss of the cargo, and would prefer to do so in the limitation proceeding.

In favor of their effort to keep the Canal Company's claims at issue here within the limitation proceeding, these parties state that one of the purposes of the limitation statutes is "to bring into one court, at one time, all of the claims arising out of a maritime disaster" (brief of Chinese Maritime Trust, at 8), what Justice Frankfurter in Maryland Casualty Co. v. Cushing, 347 U.S. 409, 415–416, 74 S.Ct. 608, 98 L.Ed. 806 (1954), called the concourse theory. But "[i]t cannot be said . . . that the concourse theory is today in a flourishing state . . .," particularly in the Second Circuit. Gilmore and Black, *supra* note 4, at 730. In Petition of Texas Co., 213 F.2d 479, 482 (2d Cir. 1954), Judge Frank effectively answered the contentions made here. Except when necessary to protect an insufficient fund " . . . . (1) the statutory privilege of limitation liability is not in the nature of a *forum non conveniens* doctrine, and (2) the statute gives a shipowner, sued in several suits (even if in divers places) by divers persons, no advantage over other kinds of defendants in the same position." See also In re Lake Tankers Corp., 232 F.2d 573 (2d Cir. 1956), aff'd sub nom., Lake Tankers v. Henn, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957). Since we have already found that the Canal Company's claim is not limitable, there is no need to bring its claim into concourse in order to protect the fund now before the court.

For the above reasons, we find that the Panama Canal Company's action for the costs of removal of the SS SIAN YUNG from the Panama Canal should not be subject to the injunction in the restraining order in this action. Submit order on 5 days notice.

---

6. Just what issues of fact will be common to both proceedings has not been made particularly clear. We assume that the limitation proceeding will touch on the issue of causation only so far as is necessary to determine whether the events causing the sinking were within the owner's privity and knowledge.