478 F.2d 1357
 Complaint of CHINESE MARITIME TRUST, LTD.,
Plaintiff-Appellant, as Owner of the STEAMSHIP
SIAN YUNG, for Exoneration from or
Limitation of Liability.
REPUBLIC OF VIETNAM and Tong Cuoc Tiep Te (General Supply
Agency) and Union Textile Corp., et al., Cargo Claimants,
v.
PANAMA CANAL COMPANY, Appellee.
 No. 747, Docket 72-1968.
 United States Court of Appeals,
Second Circuit.
 Argued April 23, 1973.
Decided April 30, 1973.
 
 David C. Wood, New York City, (Daniel K. Read, Hill, Betts & Nash, New York City, of counsel), for plaintiff-appellant.
 Philip A. Berns, Atty., Admiralty and Shipping Section, Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., Whitney North Seymour, Jr., U. S. Atty., S. D. New York, Gilbert S. Fleischer, Atty. in Charge, and Warren A. Schneider, Atty., Admiralty and Shipping Section, New York, Dept. of Justice, New York City, of counsel), for Panama Canal Co.
 Before BREITENSTEIN,* KAUFMAN and MANSFIELD, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 On December 6, 1970, the S.S. Sian Yung, owned by Chinese Maritime Trust Ltd., sank in the Panama Canal. Since the sunken hull obstructed travel by vessels in this heavily traversed navigable waterway, removal efforts were commenced by the Panama Canal Company ("Canal Co."), an agency of the United States, after the latter had been advised by the owner that it had abandoned the vessel to its insurance underwriter and that the underwriter did not intend to undertake removal of the vessel. Meanwhile the owner, faced with cargo claims of at least $1.6 million and a claim by the Canal Co. for wreck removal expenses, which were then estimated at $800,000 by the owner and later at $2 million by the Canal Co., commenced a proceeding in the Southern District of New York for limitation of the owner's liability to its interest in the vessel and her then pending freight, pursuant to the Shipowners' Limited Liability Act, 46 U.S.C. Secs. 183-185, 188 ("Limitation Act"), and Rule F of the Admiralty Rules. An ad interim stipulation of value for the wreck and its pending freight in the amount of $16,246.57 was approved, and the usual monition and restraining order enjoining the commencement of other proceedings in any jurisdiction for damages resulting from the casualty pending a determination in the limitation proceeding were given.
 
 
 2
 From an order of the district court declaring that the Canal Co.'s claim for wreck removal costs[1] is not subject to limitation or the restraining order, the owner appeals. Subject to the conditions noted below, we affirm, substantially for the reasons stated in Judge Motley's opinion, 361 F.Supp. 1175 (S.D. N.Y.1972).
 
 
 3
 The Limitation Act was enacted in 1851 as a measure designed to promote investment in American shipping in competition for world trade. It permits a shipowner to limit his liability to the amount of his interest in a ship and her pending freight "for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity or knowledge of such owner or owners. . . ." 46 U.S.C. Sec. 183(a). The Act must be construed, however, in the light of subsequentlyenacted legislation and regulations designed to insure that our country's navigable waterways will be kept free of obstructions. Section 15 of the Rivers and Harbors Act of 1899, 33 U.S.C. Sec. 409, sometimes called the Wreck Removal Act, for instance, provides that
 
 
 4
 "whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, . . . it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title."
 
 
 5
 In Wyandotte Transportation Co. v. United States, 389 U.S. 191, 205, 88 S. Ct. 379, 19 L.Ed.2d 407 (1967), the Supreme Court, holding that where a ship was negligently sunk in navigable waters and thereafter abandoned, the Government could recover wreck removal costs from the shipowner, indicated that the recovery would not be subject to limitation under the Limitation Act, since the owner would have had "privity or knowledge" within 46 U.S.C. Sec. 183(a). Speaking for a unanimous court, Justice Fortas noted that "the duty imposed by and the remedy provided in the final clause of Sec. 15 [are] not prescribed only for owners of negligently sunk vessels. Those provisions apply 'whenever a vessel . . . is wrecked and sunk in a navigable channel, accidentally or otherwise . . . .' . . . We believe the sections noted by petitioners are intended to protect the United States against liability for removing a sunken vessel if it chooses to do so." (Emphasis supplied). 389 U.S. at 206-207, 88 S.Ct. at 388.[2]
 
 
 6
 Pursuant to the Canal Zone Code, ch. 81, Shipping and Navigation Sec. 1331 (which authorizes the President to prescribe regulations governing the passage and control of vessels through the Panama Canal) and 3 U.S.C. Sec. 301, in turn, President Johnson, by Executive Order 11305, delegated to the Secretary of the Army the power to adopt regulations pertaining to the removal of wrecked vessels from the Canal. Thereafter Title 35, ch. 1, of the Code of Federal Regulations was adopted, which provides in Sec. 117.5 that when a vessel becomes an obstruction in the Panama Canal the Canal authorities may remove it without awaiting permission of the owner and that unless the Canal Co. is subsequently found responsible for the accident or condition necessitating the removal of the wreck, the necessary expenses incurred by it shall be a proper charge against the owner.[3]
 
 
 7
 Thus, although responsibility for expenses incurred in removing a wreck from the Panama Canal may ultimately be laid at the door of the negligent party or parties, the immediate obligation to remove the obstruction has been imposed, both by statute and by regulation, upon the shipowner, regardless whether the sinking was caused by his negligence.[4] Confronted with this duty the owner cannot contend that its failure to remove the vessel and the consequent expense of removal incurred by the Canal Co. is "without [its] privity or knowledge," which is a condition precedent to its invocation of the Limitation Act. To hold otherwise would be to permit the owner, by limiting its liability to the value of the sunken hull, to thwart the strong public policy in favor of creating an incentive on the part of the owner promptly to remove its obstructing ship from navigable waterways.[5] See Wyandotte Transportation Co. v. United States, 398 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); In re Pacific Far East Line, Inc., 314 F.Supp. 1339, 1349 (N.D.Cal.1970). We therefore hold that the Canal Co.'s claim is not limitable. Accordingly it may be the subject of an in personam suit by the Canal Co. against the shipowner. In so holding we intimate no view as to the merits of the Canal Co.'s claim or the defenses or counterclaims that may be asserted by the owner against it.
 
 
 8
 More troublesome is the owner's contention that, regardless whether the Canal Co.'s claim is not limitable, all claims arising out of the sinking of the Sian Yung should as a matter of equity be prosecuted solely in the pending limitation proceeding rather than become the subject of litigation in other districts, with possible multiple trials of the same issues and duplicative proliferation, waste and inconvenience for all concerned. In support of this position the owner relies principally upon Justice Frankfurter's espousal in Maryland Casualty Co. v. Cushing, 347 U.S. 409, 415, 74 S. Ct. 608, 98 L.Ed. 806 (1954), of the limitation proceeding as providing the "benefit of a concursus" in which all claims would be disposed of in one action.
 
 
 9
 Although the "concursus" theory has not been looked upon with favor by this circuit, at least in cases where the fund may be adequate to satisfy all claims, see In re Lake Tankers Corp., 232 F.2d 573, reaffirmed en banc, 235 F.2d 783 (2d Cir. 1956), affd. sub nom. Lake Tankers Corp. v. Henn, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); Petition of Trinidad Corp., 229 F.2d 423, 428 (2d Cir. 1955); Petition of Texas Co., 213 F.2d 479 (2d Cir.), cert. denied, 348 U.S. 829, 75 S.Ct. 52, 99 L.Ed. 653 (1954); Gilmore & Black, The Law of Admiralty Sec. 10-41 at 728-32 (1957), it is unquestionably true that if the Canal Co. pursued its claim for expenses of wreckage removal in a separate action in the Canal Zone, as it originally intended, the owner and perhaps some of the cargo claimants would be forced to engage in duplicative litigation of identical issues in these two widely separated districts. When we pointed this out upon oral argument counsel for the Government, recognizing that such a course would be wasteful and inconvenient not only for the parties but for the courts involved, commendably stated that he would recommend that the Canal Co. institute its suit against the owner in the United States District Court for the Southern District of New York. That course will permit litigation of all claims before one judge under that district's individual calendar system, thus minimizing expense and delay. Accordingly, we affirm the decision of the district court on condition that all parties consent to litigation in the United States District Court for the Southern District of New York of all claims arising out of the sinking of the S.S. Sian Yung.
 
 
 
 *
 Of the United States Court of Appeals for the Tenth Circuit, sitting by designation
 
 
 [1]
 On appeal the Canal Co. urges that expenditures it has made to clean up oil pollution resulting from leakage from the sunken vessel give rise to a claim under relevant portions of the Oil Pollution Act, 33 U.S.C. Sec. 1161(a)(5), (b)(1), (f)(1), (n), which it argues is also not subject to limitation. As that contention was not presented to or considered by the district court, however, it is not properly before us on appeal and we do not pass on its validity
 
 
 [2]
 Recently, moreover, the Supreme Court, in unanimously upholding Florida's Oil Spill Prevention and Pollution Control Act over the proffered objection that the federal Water Quality Improvement Act of 1970, 33 U.S.C. Sec. 1161 et seq., precluded state regulation, observed:
 "If Florida wants to take the lead in cleaning up oil spillage in her waters, she can use Sec. 12 of the Florida Act and recoup her costs from those who did the damage. Whether the amount of costs she could recover from a wrongdoer are limited to those specified in the Federal Act and whether in turn this new Federal Act removes the pre-existing limitations of liability in the Limitation of Liability Act are questions we need not reach here. Any opinion on them is premature. It is sufficient for this day to hold that there is room for state action in cleaning up the waters of a State and recouping, at least within federal limits so far as vessels are concerned, her costs." Askew v. American Waterways Operators, Inc., 411 U. S. 325, 332, 93 S.Ct. 1590, 1595, 36 L.Ed.2d 280 (1973).
 While the question of the effect of later statutes of Congress on the Limitation Act is thus left open, the policy of allowing recoupment of wreck removal or cleanup expenses incurred by government agencies which have undertaken these tasks is evident.
 
 
 [3]
 "Sec. 117.5 Control of wrecked, injured, or burning vessels
 "When a vessel in Canal Zone waters goes aground, or is wrecked, or is so injured that it is liable to become obstruction in such waters, or is on fire, the Canal authorities shall have the right to supervise and direct, or to take complete charge of and conduct, all operations which may be necessary to float the vessel, to clear the wreckage, to remove the injured vessel to a safe location, or to extinguish the fire, as the case may be. The Canal authorities may, when necessary, take such action without awaiting the permission of the owner or agent of the vessel, and may require the master of the vessel and all persons under his supervision and control to place the vessel, and all equipment on board, at the disposal of the Canal authorities without cost to the Canal. Unless the Panama Canal Company is subsequently found and determined to be responsible for the accident or the condition necessitating action by the Canal authorities, the necessary expenses incurred by the Canal in carrying out the provisions of this section shall be a proper charge against such vessel, her owners and/or her operators."
 
 
 [4]
 It is true that the owner may fail to perform its "duty to commence the immediate removal" of the wreck, 33 U.S.C. Sec. 409, and that its "failure to do so shall be considered as an abandonment of such craft," id. However, Sec. 409 does not provide the limits of the owner's responsibility in the matter. Upon abandonment the owner risks exposure to heavy personal liability for wreck removal expenses incurred by the Government if the latter proves that the sinking was due to the owner's negligence. See Wyandotte Transportation Co., supra
 In In re Highland Nav. Corporation, 24 F.2d 582, 584 (S.D.N.Y.1927), affd, 29 F.2d 37 (2d Cir. 1928), the district court stated that "a shipowner whose vessel has been wrecked and sunk without his fault has a right to abandon it and . . . is not under any obligation . . . to . . . remove it" in view of Sec. 20 of the Rivers and Harbors Act, 33 U.S.C. Sec. 415, which provides that wreck removal expenses incurred by the Government "shall be a charge against such craft and cargo." However, that conclusion has been superseded by the Supreme Court's later statement in Wyandotte that the quoted language of Sec. 20 "does not lead to the conclusion that the Government possesses no other right to recover. The phrase merely describes the lien interest of the United States." 389 U.S. 191, 208 n. 20, 88 S.Ct. 379, 389, 19 L.Ed.2d 407.
 
 
 [5]
 The shipowner's performance of its duty to remove does not preclude it from seeking recovery of its wreck removal expenses from others to the extent that their negligence caused the wreck, just as the Canal Co. may recover such expenses from the shipowner to the extent that its negligence was a cause of the sinking. See United States v. Moran Towing & Transportation Co., 409 F.2d 961 (4th Cir. 1969); In re Marine Leasing Services, Inc., 471 F.2d 255 (5th Cir. 1973)