In the Matter of Compania Nacional de Navegacion, S. A.

**PANAMA CANAL COMPANY**

v.

**COMPANIA NACIONAL DE NAVEGACION, S. A.**

C.V. 76–0349.

United States District Court, Canal Zone, Balboa Division.

Oct. 24, 1978.

---

Roy V. Phillipps, Balboa, Canal Zone, for plaintiff.

Dwight A. McKabney, John L. Haines, Jr., James R. Dunworth, Balboa Heights, Canal Zone, for defendant (Panama Canal Co.).

SEAR, District Judge.

This action arises out of an April 29, 1976 collision of the M/V TAIRONA, owned by the Compania Nacional de Navegacion, S.A. ("Navenal"), with the breakwater at the Atlantic entrance to the Panama Canal, at Cristobal in the Canal Zone. Shortly after the collision, the vessel sank inside Cristobal harbor, partly blocking the entrance channel to the Canal. The Panama Canal Company ("Company"), as operator of the Panama Canal, demanded assurances that the owners would remove the wreck by May 3, 1976. Failing such assurances, the Company informed Navenal it would remove the wreck for the account of the vessel pursuant to 35 C.F.R. § 117.5. On May 3, 1976, Navenal informed the Company that the M/V TAIRONA had been abandoned to its underwriters as a total loss. The wreckage was removed by the Company at an expense of $1,513,617.50.

Navenal seeks to limit its liability to the present value of the vessel and pending freight under the provisions of the Limitation of Liability Act, 46 U.S.C. § 183.

In a separate action consolidated with Navenal's limitation action, the Company seeks to recover its expenses in removing

the wreck of the M/V TAIRONA from the navigation channel.

Navenal asks for an "order . . . holding that, as a principle of law, Petitioner may limit its liability in the above cause pursuant to 46 U.S.C. § 183 et seq. provided Petitioner sustains its burden of showing lack of 'privity and knowledge' in the case." This motion is cognizable as a motion for partial summary judgment under the provisions of Rule 56(a)–(b), F.R.C.P.

The Company, on the other hand, seeks summary judgment on its salvage claim.

The Limitation of Liability Act, 46 U.S.C. § 183(a), provides, in part:

The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the case provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

On the other hand, 35 C.F.R. § 117.5 provides:

When a vessel in Canal Zone waters goes aground, or is wrecked, or is so injured that it is liable to become an obstruction in such waters, or is on fire, the Canal authorities shall have the right to supervise and direct, or to take complete charge of and conduct all operations which may be necessary . . . to clear the wreckage . . . Unless the Panama Canal Company is subsequently found and determined to be responsible

for the accident or the conditions necessitating action by the Canal authorities, the necessary expenses incurred by the Canal in carrying out the provisions of this section shall be a proper charge against such vessel, her owners and/or her operators.

The President's authority to prescribe regulations governing the passage and control of vessels through the Panama Canal and impose criminal penalties for their violation, is found in C.Z. Code tit. 2, § 1331. This authority, in turn, was delegated to the Secretary of the Army by Executive Order 11305, which permits the Secretary to adopt regulations pertaining to the removal of wrecked vessels from the Canal. Such delegation of presidential authority is authorized by 3 U.S.C. § 301, which permits the delegation of "any function which is vested in the President by law" to department and agency heads who have been appointed with the advice and consent of the Senate. *The Chinese Maritime Trust, Ltd.,* 478 F.2d 1357, 1360 (2d Cir.), *cert. denied* 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1973).

The application of the Limitation of Liability Act to this regulation has been considered once before. *The Chinese Maritime Trust, Ltd.,* 478 F.2d 1357 (2d Cir.), *cert. denied* 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1973). The owners of the S.S. SIAN YUNG, which sank in the Canal, also sought to limit their liability for wreck removal expenses incurred by the Company, but the Second Circuit affirmed the district court's finding that wreck removal expenses were not subject to limitation of liability.

The court drew an analogy between the Canal regulation, 35 C.F.R. § 117.5, and the wreck removal provisions of Section 15 of the Rivers and Harbors Navigation Act of 1899, 33 U.S.C. § 409.[1] While the Rivers

---

1. The applicable section of this statute provides: [W]henever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed

or abandoned, and the neglect or failure of the said owner to do so shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered an abandonment of such craft, and subject the same to removal by the United States as pro-

and Harbors Navigation Act does not apply to the Canal, the court reasoned that the same public policy considerations apply in the case of the Canal and "[t]o hold otherwise [than against limitation of liability] would be to permit the owner, by limiting its liability to the value of the sunken hull, to thwart the strong public policy in favor of creating an incentive on the part of the owner promptly to remove its obstructing ship from navigable waterways." *Id.* at 1361.

While the Fifth Circuit has never had occasion to consider the effect of the Limitation of Liability Act on 35 C.F.R. § 177.5, it has ruled that the implied civil action for wreck removal expenses under the Rivers and Harbors Navigation Act is not subject to the provisions of the Limitation of Liability Act. *University of Texas Medical Branch at Galveston v. U. S.,* 557 F.2d 438 (5th Cir. 1977). The court concluded that the Supreme Court had ruled in *Wyandotte Transportation Co. v. U. S.,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) that this statute gave rise to an implied civil remedy for wreck removal expenses incurred by the government, and went on to conclude that the policy arguments present in *Wyandotte* were a sufficient basis to exclude limitation of liability:

> Although the holding of the Court in *Wyandotte* leaves the applicability of the Limitation Act an open question, the policy arguments by which the Court reached its holding help answer that question. Accordingly, at least in cases involving owners of wrecks, courts have uniformly read *Wyandotte* as implying that in personam liability could not be limited in a Wreck Act case. *See Hines, Inc. v. United States,* 551 F.2d 717 (6th Cir. 1977); *In re Pentzien, Inc.,* 1974 A.M.C. 1201 (D.Neb.1974); *In re Scranton Industries,*

*Inc.,* 358 F.Supp. 7 (S.D.N.Y.1972); *In re Pacific Far East Line, Inc.,* 314 F.Supp. 1339 (N.D.Cal.1970), *aff'd on separate issue,* 472 F.2d 1382 (9th Cir. 1973). *See also In re Chinese Maritime Trust, Ltd.,* 361 F.Supp. 1175 (S.D.N.Y.1972), *aff'd* 478 F.2d 1357 (2d Cir. 1973), *cert. denied,* 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1974). *University of Texas Medical Branch at Galveston v. U. S.,* 557 F.2d 438, 446 (5th Cir. 1977).[2]

■ The result here is not changed by virtue of the fact that while *University of Texas* deals with a conflict between two statutes, here the wreck removal obligation is imposed by a regulation. When a regulation is enacted pursuant to and in furtherance of a specific statute, it has the force of law. *Public Utilities Comm. of California v. U. S.,* 355 U.S. 534, 542–43, 78 S.Ct. 466, 452, 2 L.Ed.2d 470 (1958); *Farkas v. Texas Instrument, Inc.,* 375 F.2d 629, 632 (5th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967); 73 C.J.S. "Public Administrative Bodies and Procedure" §§ 107–108.

■ When two statutes conflict, and they deal with the same subject, they are to be harmonized if possible, but if they cannot be harmonized, the more specific of the two prevails over the more general. *Bowman v. Texas Educational Foundation, Inc.,* 454 F.2d 1097 (5th Cir. 1972); 82 C.J.S. Statutes §§ 366–67. Since both the Limitation of Liability Act and § 117.5 deal with navigation and the allocation of the costs of maritime accidents, they should be harmonized if possible. The best reconciliation which can be effected without vitiating one of the two entirely is to conclude that § 117.5 is an exception to limitation of liability. This conclusion is consistent with the rule that the more specific enactment prevails over the more general.

vided for in sections 411 to 416, 418 and 502 of this title.

**2.** The *University of Texas* case holds that vessel owners are only liable for wreck removal expenses when they have been negligent. Under 35 C.F.R. § 117.5, on the other hand, the vessel owner is liable unless the Canal has been negligent. Since the regulation is explicit on

this point, while the Rivers and Harbors Navigation Act action for wreck removal arises only by implication, this court must follow the regulation. This court need not reach the question of whether a non-negligent vessel owner could recover wreck removal expenses from a negligent party other than the Canal.

■ Moreover, this result also follows the rule that if two statutes cannot be reconciled, the later enacted statute governs.[3]

■ Finally, limitation of liability is only available to a vessel owner for losses incurred without the "privity or knowledge" of the vessel owner. 46 U.S.C. § 183(a). These concepts have been defined as follows:

Privity means personal cognizance or participation in the fault or negligence which causes the loss [citations omitted]. The term "knowledge" as used in the statute, has been held to mean not only personal cognizance but also the means of knowledge of which a party *must avail himself* in order to prevent a condition likely to produce or contribute to a loss [citations omitted]. *Greater New Orleans Expressway Commission v. Tug Claribel,* 222 F.Supp. 521, 524 (E.D.La.1963), *aff'd* 341 F.2d 956 (5th Cir. 1965), *cert. denied* 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966) [emphasis supplied].

It has also been held that "[p]rivity and knowledge are deemed to exist where the owner has the means of knowledge or, as otherwise stated, where knowledge could have been obtained from reasonable inspection." *China Union Lines, Ltd. v. A. O. Andersen & Co.,* 364 F.2d 769, 787 (5th Cir. 1966), *cert. denied* 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967).

■ Here, once the M/V TAIRONA has sunk in the channel, partially obstructing it, the owners could not be said to lack knowledge of the fact that the vessel would have to be removed. They were in fact notified of their obligation to remove it and failed to act. Similar circumstances were held to constitute "knowledge" in *The Snug Harbor,* 53 F.2d 407 (E.D.N.Y.1931). The SNUG HARBOR had sunk in Block Island Sound, and had not been marked or removed by its owners, in violation of the

Rivers and Harbors Navigation Act, 33 U.S.C. § 409. After two barges had collided with the wreck and sank with their cargoes, the owners of the SNUG HARBOR sought to limit their liability, but their petition was rejected by the court, first because the criminal provisions of 33 U.S.C. § 409 imposed a personal, nondelegable duty upon the vessel owner, and second, once the SNUG HARBOR had sunk, the presence of the wreck was clearly within the privity and knowledge of its owner.

Similarly, C.Z. Code tit. 2, § 1331 provides a criminal penalty for violations of regulations adopted under it, and the regulation, § 117.5, creates a legal duty in the vessel owner, such that "the owner cannot contend that its failure to remove the vessel and the consequent expense of removal incurred by the Canal Co. is 'without privity or knowledge,' . . . a condition precedent to its invocation of the Limitation Act." *The Chinese Maritime Trust, Ltd.,* 478 F.2d 1357, 1360–61 (2d Cir. 1973), *cert. denied* 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1973).

Since it had privity and knowledge, Navenal cannot in any event take advantage of the Limitation of Liability Act. Accordingly,

IT IS ORDERED that the motion of Compania Nacional de Navegacion, S.A., be DENIED;

IT IS FURTHER ORDERED that the motion of the Panama Canal Company be GRANTED in that its claim for wreck removal expenses shall not be subject to the provisions of the Limitation of Liability Act.

---

**3.** The Fifth Circuit followed this rule in the *University of Texas* case:

This is not to say that the Limitation Act no longer has any vitality. It is rather to say that its force succumbs to that of a later statutory enactment which, when still later construed by the Supreme Court in a manner that wars with the policies of the Limitation Act, must prevail over the earlier Act. *University of Texas Medical Branch at Galveston v. U. S.,* 557 F.2d 438, 455 (5th Cir. 1977).