In the Matter of The Complaint of HOK-KAIDO FISHERIES CO., LTD. for Exoneration from or Limitation of Liability.

In the Matter of The Complaint of LEE WANG ZIN NAVIGATION CO., S. A., and Kee Yeh Maritime Co., Ltd. for Exoneration from or Limitation of Liability.**

Civ. Nos. A 80–137, A 80–199.

United States District Court, D. Alaska.

Feb. 4, 1981.

** These two cases have been consolidated for the purposes of this motion only.

Bradbury, Bliss & Riordan, Michael H. Woodell, Anchorage, Alaska, for Hokkaido Fisheries Co., Ltd. in A 80–137 and for Lee Wang Zin Navigation Co., S. A. and Kee Yeh Maritime Co., Ltd. in A 80–199.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Rene Gonzales, Acting U. S. Atty., District of Alaska, Anchorage, Alaska, Philip A. Berns, Atty. in Charge, Torts Branch, Civil Division, San Francisco, Cal., Warren A. Schneider, Norman J. Ronneberg, Jr. (argued), Torts Branch, Civil Division, U. S. Dept. of Justice, San Francisco,

Cal., for claimant United States of America in both A 80–137 and A 80–199.

## OPINION AND ORDER

FITZGERALD, District Judge.

The government's motion to file a claim outside of limitation in admiralty raises one issue. Does the Clean Water Act of 1977[1] give the United States a right, as a matter of law, to file claims for recovery of costs of oil pollution cleanup outside of a shipowner's action for exoneration from or limitation of liability.[2] I conclude that the government may file separate claims under the CWA for costs of cleanup.

The LEE WANG ZIN and the RYUYO MARU NO. 2 went aground in the territorial waters of Alaska in separate incidents late in 1979, and both vessels discharged large amounts of oil into the sea. Their owners failed to make adequate efforts of oil cleanup, and the federal government promptly took measures to reduce the damage to the environment. The government's alleged costs for cleanup following the grounding of the RYUYO MARU and the grounding of the LEE WANG ZIN are $550,000 and $2,238,000 respectively. Both vessels have been lost and the only freight pending is for the LEE WANG ZIN in the amount of $46,589.

The owners invoked the admiralty jurisdiction of this court and moved for exoneration from or limitation of the liability caused by events surrounding the loss of their two vessels. The United States has applied for an order permitting it to file separate actions for recovery of actual oil pollution cleanup costs contending that the CWA provides for such recoveries in a manner separate and aside from any claims controlled by the limitation proceeding.

■ The Limitation Act was enacted by Congress in 1851 to promote investment in the American shipping industry in competi-

---

1. Clean Water Act, 33 U.S.C. §§ 1251–1376 (1978). Hereinafter "CWA."

2. Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 181–195 (1958). Hereinafter Limitation Act.

tion for world trade.[3] It provides that the shipowner may, on the occurrence of some event for which the ship is liable, restrict liability to whatever value the ship may have after the event, e. g. a few strippings from a wreck. A claimant may lift the limitation only if it is demonstrated in the liability proceeding that the event causing loss was within the owner's knowledge and privity.[4]

■ Were the Limitation Act to apply to the government's claim here, there would be nothing available to offset the $550,000 cost of cleanup occasioned by the RYUYO MARU, and only $46,589 available to offset the $2,238,000 cleanup cost caused by the LEE WANG ZIN. In order to avoid the limitation the government would have the burden of establishing negligence or unseaworthiness, and were it to do so, the owners would then have the opportunity to prove absence of knowledge and privity.[5]

■ The CWA allows for recovery by the government of actual costs of removing oil pollution up to a prescribed ceiling. Damages, for vessels such as the LEE WANG ZIN or RYUYO MARU, are limited to an amount not to exceed $150 a gross ton of the vessel or $125,000, whichever is great-

er.[6] Vessels of 300 gross tons or more operating in the territorial waters of the United States are required to execute a certificate of financial responsibility for this limited amount.[7] The polluting vessel is held strictly liable for damages up to this amount unless the owner can prove that the pollution occurred solely because of an act of God, an act of war, an act or omission of a third party, or because of negligence on the part of the United States.[8] If the government can show that the pollution occurred because of willful negligence or willful misconduct within the knowledge or privity of the owner, the government may recover its actual cleanup costs without limitation.[9]

■ Application of the CWA to these maritime losses would cast upon the shipowners the burden of proving that they fall within one of the exceptions, otherwise they are strictly liable for cleanup costs up to the statutory amount. For example, in the case of the LEE WANG ZIN $2,329,200 becomes available against which the entire actual cost of cleanup can be satisfied.

■ The plain language of the CWA is instructive. The statement "notwithstanding any other provision of law"[10] has

3. *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941).

4. 46 U.S.C. § 183 (1958); Gilmore and Black, The Law of Admiralty ' 10.1–10.4(a) (2d ed. 1975).

5. *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976).

6. 33 U.S.C. § 1321(f)(1) (1978).

7. 33 U.S.C. § 1321(p)(1) (1978).

8. 33 U.S.C. § 1321(f)(1) (1978).

9. *Id.*

10. 33 U.S.C. § 1321(f)(1): Except where an owner or operator can prove that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing clauses, such owner or operator of any vessel from which oil or a hazardous substance

is discharged in violation of subsection (b)(3) of this section, shall, *notwithstanding any other provision of law*, be liable to the United States Government for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance by the United States Government in an amount not to exceed, in the case of an inland oil barge $125 per gross ton of such barge, or $125,000, whichever is greater and in the case of any other vessel, $150 per gross ton of such vessel (or, for a vessel carrying oil or hazardous substances as cargo, $250,000), whichever is greater, except that where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable to the United States Government for the full amount of such costs. Such costs shall constitute a maritime lien on such vessel which may be recovered in an action in rem in the district court of the United States for any district within which any vessel may be found. The United States may also bring an action against the owner or operator of such vessel in any court of competent jurisdiction to recover such costs. [emphasis supplied]

seemed dispositive to some. As the court said in *In Re Steuart Transportation Co.*, "At least as to federal oil spill cleanup costs, the language 'notwithstanding any other provision of law' in § 1321(f)(1) certainly appears to preclude application of the Liability Act."[11] A standard admiralty text regards this conclusion as self-evident.

> The only possible meaning of the "notwithstanding" clause is that in actions by the United States under WQIA [predecessor statute of the CWA] the WQIA ceilings apply and the Limitation of Liability Act is, to that extent, superceded.[12]

Although the plain language seems clear enough to me, prudence suggests an inquiry into the legislative history. The House Report and the Conference Committee Report say of the limitation:

> This limitation on liability is intended to be the only limitation on liability for discharge of oil or matter under this section, notwithstanding any other provisions of law.[13]

In the light of the committee reports, the court in *United States v. Dixie Carriers, Inc.*, read the statutory "notwithstanding" clause to mean "that no other laws *limit* a pollutor's liability for the United States' cleanup costs."[14]

I agree and conclude that any other result is difficult to reach.

■ The legislative purpose of the CWA is also consistent with this statutory construction. Congress, by the terms of the statute, declared its policy "... that there

[shall] be no discharges of oil or hazardous substances into or upon the navigable waters of the United States ...."[15] To that end, Congress provided for government cleanup where pollutors failed to act and devised the formula for damages embodied in § 1321(f)(1). It made clear that it did not intend the provisions of the Limitation Act to apply by setting different standards for both minimum and maximum liability and a different dollar limitation. It also provided that the affected vessels must maintain evidence of financial responsibility for the minimum amount with the government,[16] and it is these funds which the government now seeks. Moreover, these funds are unreachable by other suitors in the limitation proceeding since they may only be used to reimburse the United States for oil pollution cleanup costs. In the face of a Congressional design so clearly expressed, it would be incongruous to hold that the 130 year old Limitation Act could frustrate the entire scheme. I decline to do so.

■ Finally, the owners argue that, even if the government should be allowed to assert its claims under the CWA, all matters should remain within the admiralty proceeding for limitation because there are common issues of law and fact which, adjudicated in separate forums, might expose them to contradictory judgments. This is not, however, an argument for retention of all matters within the admiralty proceeding but rather for consolidation to which the

---

The Clean Water Act of 1977 is the direct successor of the Federal Water Pollution Control Act of 1972 (FWPCA), 33 U.S.C. § 1321 (1972) and the Water Quality Improvement Act of 1970 (WQIA), 33 U.S.C. § 1161 (1970). Insofar as the "notwithstanding any other provision of law" language is concerned, 33 U.S.C. § 1321(f)(1) is identical to its predecessor statutes.

**11.** *Complaint of Steuart Transportation Co.*, 435 F.Supp. 798, 806 n.8 (E.D.Va.1977) *aff'd* 596 F.2d 609 (4th Cir. 1978).

**12.** Gilmore and Black, The Law of Admiralty at 828 (2d ed. 1975). Others, however, have not regarded this language as so clear. *See e. g.* Comment, Oil Spills and Cleanup Bills: Federal Recovery of Oil Spill Cleanup Costs, 93 Harv.L.

Rev.1761, 1772–73 (1980) and cases cited therein. ("That crucial 'notwithstanding' clause, ... 'is not a model of clarity' ").

**13.** H.R.Rep.No.91–127, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News 2691, 2702; Conference Report No. 91–940, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad.News 2712, 2714–15.

**14.** 462 F.Supp. 1126, 1128 (E.D.La.1978) (emphasis in original), *aff'd* 627 F.2d 736 (5th Cir. 1980).

**15.** 33 U.S.C. § 1321(b)(1) (1978).

**16.** 33 U.S.C. § 1321(p)(1) (1978).

government has already agreed should its motion to file its claims under the CWA be granted.[17]

In sum, the government's statutory claim under the CWA may be filed and all claims consolidated with the admiralty proceeding for limitation.

ORDERED ACCORDINGLY.

17. *Cf. In re Chinese Maritime Trust Ltd.,* 478 F.2d 1357 (2d Cir. 1973) *cert. denied* 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1974).

(claim for wreck removal not subject to Limitation Act but all claims should be litigated before one judge).