The Kansas wrongful death statute, K.S.A. 60–1901, provides:

"If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he or she lived, in accordance with the provisions of this article, against the wrongdoer, or his or her personal representative if he or she is deceased."

The action Shirley Brubaker might have maintained had she lived would have been "a cause of action arising out of the rendering of or the failure to render professional services by a health care provider." Thus, the limitations of K.S.A. 60–513(c) apply in the wrongful death action as well. This interpretation of the interface between the malpractice statute of limitations and the wrongful death action maintains the legislative intent "to assure continued availability of malpractice insurance and thus practicing physicians in the state, while protecting the injured parties' causes of action." *See Stephens v. Snyder Clinic Ass'n., supra*, 230 Kan. at 130, 631 P.2d 222.

Accordingly, the Court finds that plaintiff's causes of action are barred by the provisions of K.S.A. 60–513.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment is hereby granted.

UNITED STATES of America, Plaintiff,

v.

CF INDUSTRIES, INC., and Southern Towing Company, and Memphis Towing Company, Inc., Defendants.

No. Civil 4–81–752.

United States District Court,
D. Minnesota,
Fourth Division.

July 15, 1982.

James M. Rosenbaum, U. S. Atty., and Ann D. Montgomery, Asst. U. S. Atty., Minneapolis, Minn., and Nancy J. Marvel, Attorney, Environmental Enforcement Section, Dept. of Justice, Washington, D. C., for plaintiff.

Eugene M. Warlich, Stephen T. Refsell, Doherty, Rumble & Butler, P. A., Minneapolis, Minn., and Michael J. Hogg, C. F. Industries, Inc., Long Grove, Ill., and James W. Rankin, L. Mark Wine, Kent A. Zigterman, Kirkland & Ellis, Chicago, Ill., for defendant CF Industries.

Thomas J. Flynn, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., and Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for defendants Southern Towing and Memphis Towing.

MacLAUGHLIN, District Judge.

This action involves a claim by the United States that the defendants discharged a pollutant into the Mississippi River without having obtained a permit for such discharge in violation of section 301(a) of the Clean Water Act (CWA), 33 U.S.C. § 1311(a). The government seeks to recover a statutory penalty of $10,000 for the violation under section 309(d) of the CWA, 33 U.S.C. § 1319(d). The issue raised on the motions now before the Court is whether the Limitation of Liability Act, 46 U.S.C. § 181 et seq., bars the United States from filing an independent action to recover a statutory penalty under the CWA. For the reasons stated herein, the Court concludes that the suit by the United States is not subject to the Limitation Act.

On September 27, 1979, the barge *CF 105 B* was being towed by the M/V *Baxter Southern* on the Mississippi River and arrived at Rosemount, Minnesota. The barge was loaded with anhydrous ammonia. A casualty occurred and the anhydrous ammonia was discharged from the barge. The casualty caused damage to persons and to the environment. At the time of the casualty, defendant CF Industries was the owner *pro hac vice* of the barge *CF 105 B*. CF Industries had contracted with defendant Southern Towing Company (Southern) to have its barges towed up the Mississippi. The barge *CF 105 B* was being towed pursuant to this contract on September 27, 1979. Defendant Memphis Towing Company (Memphis) claims to have been the owner of the M/V *Baxter Southern* on the date of the casualty.

On February 15, 1980, CF Industries filed a complaint in the United States District Court for the Middle District of Louisiana pursuant to the Limitation Act, 46 U.S.C. §§ 181–89. On February 18, 1982, that court issued an order which, among other things, enjoined the commencement and prosecution "of any and all suits, actions or proceedings, of any nature and description whatsoever in any jurisdiction ... to recov-

er damages for and in respect of any loss, damage, injury or destruction caused by" the casualty involving the barge *CF 105 B* on September 27, 1979.

Memphis filed a similar complaint in the United States District Court for the Eastern District of Missouri on August 15, 1980. On the same day, that court issued an order which, among other things, restrained "the institution and prosecution of any suits, actions or legal proceedings of any nature or description whatsoever in any court wheresoever ... in respect of any claim arising out of or connected with the accident or casualty." Both the CF Industries and the Memphis limitation actions were transferred to the United States District Court for the Southern District of Illinois and consolidated there with a wrongful death action arising out of the casualty.

■ On November 14, 1981, the United States filed the instant action under the CWA. The matter is now before the Court on motions by each of the three defendants. Southern has moved for summary judgment on the ground that it was not the owner or operator of the M/V *Baxter Southern* and is therefore not liable for any damage the boat may have caused. CF Industries and Memphis have filed motions to dismiss on the basis that the injunctions filed in their respective limitation actions preclude the United States from maintaining this action.

In support of its motion for summary judgment, Southern submitted an affidavit by its vice president stating that it did not own or operate the M/V *Baxter Southern* and did not have any of its agents or employees on board. However, the other parties to the action have pointed out evidence which conflicts with the affidavit. Because a genuine dispute over material facts remains, Southern's motion for summary judgment must be denied.

■ The motions to dismiss by CF Industries and Memphis are virtually identical. The issue raised by the motions involves a conflict between two federal statutes. The defendants contend that claims of the United States under the CWA are subservient to the Limitation Act. The plaintiff contends that claims for statutory penalties under the CWA should not be limited in a limitation action.[1]

The Limitation Act permits the owner of the vessel to file a complaint in a federal court to have all the claims arising out of an incident determined together. 46 U.S.C. § 185. When the owner complies with the procedures of § 185, "all claims and proceedings against the owner with respect to the matter in question shall cease." 46 U.S.C. § 185. Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure establishes additional procedures in limitation of liability actions. Rule F(3) provides: "On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or his property with respect to any claim subject to limitation in the action."

The Limitation Act was designed to foster the economic policies of the United States during the nineteenth century. "The Limitation Act was enacted by Congress in 1851 to promote investment in the American shipping industry in competition for world trade." *In re Complaint of Hokkaido Fisheries Co.*, 506 F.Supp. 631, 632–33 (D.Alas.1981) (footnote omitted). *See American Car & Foundry Co. v. Brassert*, 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933). Under the Limitation Act, an owner of a vessel may limit his or her liability for any loss occasioned by the vessel "without the privity or knowledge of such owner." 46 U.S.C. § 183(a). The liability of

1. The plaintiff also contends that CF Industries' motion is now moot. On April 28, 1982, the judge to whom the limitations actions were transferred entered two orders which appear to dissolve the injunction prohibiting claims against CF Industries in the CF Industries limitation action. The orders do not involve the Memphis limitation action. The orders are brief and use sweeping, general terms. However, CF Industries contends that the injunction was lifted for the specific purpose of permitting a claimant already in the limitations proceeding to file a separate action against CF Industries. Because the Court finds that other grounds are dispositive of CF Industries' motion to dismiss, it is unnecessary to address this issue.

the owner "shall not . . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." *Id.*

In contrast to the Limitation Act, the CWA's purpose is neither economic nor old. Congress' purpose in enacting the CWA was to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. Under the CWA, the "discharge of any pollutant by any person shall be unlawful" unless done in compliance with certain procedures. 33 U.S.C. § 1311(a). Permits may be obtained to discharge pollutants into waterways under restrictions set by the Environmental Protection Agency. 33 U.S.C. § 1342. The CWA contains two primary enforcement mechanisms. Section 311, 33 U.S.C. § 1321, regulates discharges of oil or hazardous substances into or upon the navigable waters of the United States. It subjects the party responsible for a discharge of oil or a hazardous substance to liability for clean up costs and civil penalties. The other enforcement provision of the CWA, section 309, 33 U.S.C. § 1319, provides that the United States may commence a civil action for appropriate relief, including injunctive relief, against any person who discharges a pollutant into the waters of the United States in violation of 33 U.S.C. § 1311(a). 33 U.S.C. § 1319(b). The section also permits imposition of criminal penalties of fines in the amount of $2,500 to $25,000 per day for willful or negligent violations of the act, 33 U.S.C. § 1319(c), and civil penalties of up to $10,000 per day for any violation of the Act, 33 U.S.C. § 1319(d).

In this action, the government is seeking a civil penalty of $10,000 under 33 U.S.C. § 1319(d). The defendants contend that the action for a civil penalty is controlled by the injunction entered in this case under Supplemental Admiralty Rule F(3) and 46 U.S.C. § 185. The plaintiff contends that an action for a civil penalty does not fall within the purview of the Limitation Act and that this action should be permitted to proceed. The starting point for resolving this conflict between two statutes must be the language of the statutes themselves.

The central provision of the Limitation Act provides that the liability of the owner for "any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred" by the vessel is subject to limitation. 46 U.S.C. § 183(a). Although this language is broad, it does not specifically cover suits for statutory penalties. On the other hand, the language of section 309 of the CWA is clear and direct with respect to a shipowner's liability for a statutory penalty. It provides that "any person who violates [the CWA] . . . shall be subject to a civil penalty." 33 U.S.C. § 1319(d). This section imposes strict liability on persons who pollute the nation's waters.

In *Hines, Inc. v. United States*, 551 F.2d 717 (6th Cir. 1977), the United States Court of Appeals for the Sixth Circuit faced a similar issue of statutory construction. The statutes involved in that case were section 183(a) of the Limitation Act and two sections of the Rivers and Harbors Act, 33 U.S.C. §§ 408 and 411, which impose strict liability on persons who damage river improvements built by the United States. In ruling that the claims by the United States under the Rivers and Harbors Act were not subject to limitation under the Limitation Act, the Sixth Circuit relied in part on a rule of construction that the statute later in time served to amend the broad, general language of the earlier statute. 551 F.2d at 718. The court stated:

As a general rule when the purposes of two statutes appear to be in conflict with each other, and there is no statutory language which makes any cross-reference, and, as here, the legislative history is silent as to the possible conflict, it is generally assumed that the later statute constitutes an amendment of the earlier one. *United States v. Ohio Valley Company, Inc.*, 510 F.2d 1184, 1189 (7th Cir. 1975); 2 A. Sutherland, Statutory Construction §§ 51.02, 51.05 (C. Sands 4th ed. 1973).

551 F.2d at 725.

Here, where the broad language of the Limitation Act and the enforcement provi-

sion of the CWA are in conflict and Congress has not indicated which should control over the other, the statute enacted later in time must control. The CWA was enacted over 120 years after the Limitation Act, and it was designed to deal in a comprehensive fashion with a problem which did not exist when the Limitation Act was enacted. The enforcement provisions of the CWA must be exceptions to the Limitation Act. See In re Complaint of Hokkaido Fisheries Co., 506 F.Supp. 631 (D.Alaska1981) (held that claim by United States for cleanup of oil spill under 33 U.S.C. § 1321 not subject to Limitation Act).

Moreover, the public policies embodied in the CWA are stronger and more important than those embodied in the Limitation Act. This country's policy of cleaning up and preserving the environment is one that becomes, if anything, more important with the passage of time. As the population of the country increases, the natural resources are subjected to greater pressures and accordingly need greater safeguards. On the other hand, the policy embodied in the Limitation Act has been achieved to such an extent that it has been called "hopelessly anachronistic." [2] University of Texas Medical Branch at Galveston v. United States, 557 F.2d 438, 441 (5th Cir. 1977), cert. denied, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). The American shipping industry has clearly thrived in the past century and is a dominant force in world trade. Moreover, the nation's reliance on ships is relatively less important now than it was in 1851 due to the development of other forms of transportation.

In addition, holding that actions for a civil penalty under section 309 of the CWA are not subject to the Limitation Act does little violence to the policy of the Limitation Act, while a contrary ruling would infringe on the policies of the CWA. If the action for a civil penalty is excluded from the Limitation Act, the liability of the owner for other damage caused by the spill of anhydrous ammonia (such as the wrongful death action or an action for loss of the cargo) will still be limited. However, if the government's claim for a civil penalty must be brought in the limitation action, it will have no deterrent effect; the dollar amount of damages the owner must pay arising out of the casualty would not change because the government's claim for damages would be one of several claims against a limited fund. Permitting a person to escape liability for a statutory penalty makes the penalty meaningless and should not be permitted. See 3 Benedict on Admiralty, § 32 at 4–7 (7th ed. 1981).

The defendants opine that the United States should have gone to the limitation actions and requested relief from the injunctions granted in those actions rather than directly filing this action. Although the United States has at times followed such a procedure, e.g., Hines, Inc. v. United States, 551 F.2d 717, 719 (6th Cir. 1977); In re Complaint of Hokkaido Fisheries Co., 506 F.Supp. 631 (D.Alas.1981), it is not required to do so. The injunctions entered in the limitation actions were based on the authority of Supplemental Admiralty Rule F(3), and therefore were limited to enjoining "any claim subject to limitation in the action." Because the claim for the statutory penalty was not subject to limitation in the

2. The Fifth Circuit's complete description of the Limitation Act is as follows:

The case at bar calls us to the unenviable task of deciding whether an impossibly obscure law (the 1899 [Rivers and Harbors] Act) prevails over a hopelessly anachronistic one (the Limitation Act). The Limitation Act, two distinguished commentators have remarked, "has been due for a general overhaul for the past seventy-five years; seventy-five years from now that statement will still be true, except that the overhaul will then be one hundred and fifty years overdue." [3] Our

opinion today is regrettably only a temporary dry-dock.
3 G. Gilmore & C. Black, The Law of Admiralty 677 (1st ed. 1957). In the second edition of the treatise, the authors add: "The developments of the past twenty years suggest that, although the Limitation Act may never come in for a 'general overhaul', its most likely fate, if it is not repealed outright, is that it will be judicially nibbled to death." Id. at 846 (2d ed. 1975) .... Ours is neither the first nor, doubtless, the last bite.
557 F.2d at 441.

action, it falls beyond the scope of the injunctions. In addition, requiring the United States to initially enter the limitation actions would require the United States to go through costly, time consuming and unnecessary proceedings. Such a requirement would serve no purpose while unduly complicating the proceedings.

Accordingly, IT IS ORDERED that:

1. The motion by Southern Towing Company, Inc., for summary judgment be, and hereby is, denied.

2. The motions by CF Industries, Inc. and Memphis Towing Company, Inc., to dismiss the complaint be, and hereby are, denied.