944 F.2d 577
 1992 A.M.C. 448, 60 USLW 2224, 22
Envtl. L. Rep. 20,129
 In re The GLACIER BAY.
KEE LEASING COMPANY; Mathiasen's Tanker Industries, Inc.;
Glacier Bay Transportation Corp.; Trinidad
Corporation, Appellants,
v.
Merrill McGAHAN, et al.; Trans-Alaska Liability Fund;
Kenai Pipe Line Co.; S.P.C. Shipping, Inc.; Tesoro Alaska
Petroleum Company; Cook Inlet Recourse Organization, et
al.; United States of America, Appellees.
 No. 90-35589.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1991.
Decided Sept. 13, 1991.
 
 Michael H. Woodell and Jean E. Kizer, Bradbury, Bliss & Riordan, Anchorage, Alaska, for appellants.
 Philip A. Berns, Asst. U.S. Atty., U.S. Dept. of Justice, San Francisco, Cal., A. Stephen Hut, Jr., Wilmer, Cutler & Pickering, Washington, D.C., and Brian B. O'Neill, Faegre & Benson, Minneapolis, Minn., Gary J. Strauss, Garvey, Schubert & Barer, Seattle, Wash., for appellees.
 Linus Masouredis, Deputy Atty. Gen., Oakland, Cal., for amici curiae.
 Appeal from the United States District Court for the District of Alaska.
 Before WIGGINS, BRUNETTI and T.G. NELSON, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Kee Leasing Company, Mathiasen's Tanker Industries, Inc., Glacier Bay Transportation Corp., and Trinidad Corporation (collectively "Trinidad") appeal from an order of the district court dismissing their complaint. In the complaint, Trinidad petitioned for an exoneration from and limitation of its liability for claims arising out of the 1987 grounding of an oil tanker, the Glacier Bay, in Cook Inlet, Alaska. The district court ruled that the Trans-Alaska Pipeline Authorization Act, 43 U.S.C. §§ 1651-1655 ("TAPAA"), implicitly repealed the Limitation of Vessel Owner's Liability Act, 46 U.S.C.App. §§ 181-189 (the "Limitation Act"), upon which Trinidad relied in its complaint to limit liability. The court therefore concluded that Trinidad's complaint failed to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). This court has jurisdiction of Trinidad's timely appeal pursuant to 28 U.S.C. § 1291 (1988). We affirm.
 
 BACKGROUND
 
 2
 On July 1, 1987, the Glacier Bay, an American flag tanker, sailed from Valdez, Alaska, bound for Nikiski, Alaska, carrying a cargo of trans-Alaska pipeline crude oil.[1] On July 2, the Glacier Bay attempted to anchor in Cook Inlet, below the port of Nikiski, to await a discharge berth. The vessel unexpectedly grounded at that position and, as a result of damage to its hull, the Glacier Bay discharged an estimated 150,000 gallons of crude oil.
 
 
 3
 Following the discharge of oil, suits were filed seeking compensation for damages allegedly caused by the spill.[2] On September 7, 1989, Trinidad filed a complaint seeking an exoneration from and limitation of its liability for claims arising out of the grounding of the Glacier Bay. The complaint was based on the Limitation Act, which purports to limit the liability of vessel owners and charters to the post-accident value of the ship plus pending freight. The adverse parties filed motions to dismiss Trinidad's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The motion to dismiss was based on two grounds: 1) that TAPAA implicitly repealed the Limitation Act with respect to the transportation and spills of trans-Alaska pipeline oil, and 2) that the limitation complaint was untimely filed. On April 12, 1990, the district court entered an order granting the Rule 12(b)(6) motion to dismiss based on its determination that TAPAA implicitly repealed the Limitation Act. In re Glacier Bay, 741 F.Supp. 800 (D. Alaska 1990).[3] Trinidad appeals.
 
 DISCUSSION[4]
 
 4
 A district court's dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law, and therefore, we review the dismissal de novo. Kruso v. Int'l. Tel. & Tel. Co., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). This appeal involves only one issue. We must determine whether Congress, in enacting TAPAA, implicitly repealed the Limitation Act with regard to vessels transporting trans-Alaska pipeline oil. This too is an issue of law, and therefore, we review it de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We will first discuss the Limitation Act and TAPAA generally. Then, we will analyze the implicit repeal doctrine and its application to these statutes.
 
 I. The Limitation Act and TAPAA
 
 5
 The Limitation Act, enacted in 1851, permits vessel owners and charterers, who meet certain conditions, to limit their liability for damage caused by their vessel to the post-accident value of the vessel plus pending freight. 46 U.S.C.App. §§ 183, 186.[5] The Act was intended to promote investment in the American shipping industry by making the American industry competitive with that of Great Britain. See Just v. Chambers, 312 U.S. 383, 385, 61 S.Ct. 687, 690, 85 L.Ed. 903 (1941); University of Tex. Medical Branch v. United States, 557 F.2d 438, 454 (5th Cir.1977), cert. denied, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). While the Limitation Act has been criticized by some commentators in recent years as being outdated,[6] it has not been repealed by Congress, and courts therefore continue to apply it. See, e.g., Matter of Hechinger, 890 F.2d 202, 206 (9th Cir.1989) (finding that Limitation Act is applicable to private, noncommercial boats), cert. denied, --- U.S. ----, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990). In fact, in 1984, Congress amended the Act by increasing the minimum limitation liability amount prescribed by § 183(b). Pub.L. 98-498, 98 Stat. 2306 § 213(a) (1984).
 
 
 6
 TAPAA, enacted in 1973, is part of the legislation which authorized the construction of the trans-Alaska oil pipeline. 43 U.S.C. § 1653(c).[7] TAPAA establishes a comprehensive liability scheme applicable to damages resulting from the transportation of trans-Alaska pipeline oil. It creates strict liability for damages resulting from spills of trans-Alaska oil up to $100,000,000 per spill. The first $14,000,000 is to be paid by the vessel's owner and operator (collectively "owner"). 43 U.S.C. § 1653(c)(3). Any remaining claims, up to the additional $86,000,000, are paid by the Trans-Alaska Pipeline Fund (the "Fund"), which was created by TAPAA. Id. The Fund is an accumulation of money raised by taxing trans-Alaska oil. 43 U.S.C. §§ 1653(c)(4), (5). If the total claims exceed the $100,000,000 of strict liability, they are reduced proportionately, and the claimants may pursue the unpaid portions under other applicable state and federal laws. 43 U.S.C. § 1653(c)(3). Once payment is made to the oil spill victims, where either negligence or unseaworthiness of the vessel caused the spill, the various parties have subrogation rights and may pursue legally those responsible for the spill. 43 U.S.C. § 1653(c)(8).[8]
 
 
 7
 II. TAPAA's Implicit Repeal of the Limitation Act
 
 
 8
 The sole issue in this appeal is whether, in enacting TAPAA, Congress implicitly repealed the Limitation Act with regard to the transportation of trans-Alaska oil. The Supreme Court has outlined the types of implicit repeal:
 
 
 9
 "[There are] two well-settled categories of repeals by implication--(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act."
 
 
 10
 Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (quoting Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)) (emphasis added). In each of the two categories "the intention of the legislature to repeal must be clear and manifest." Id. This court has indicated that, "[r]epeals by implication ... are not favored and will only be found when 'the new statute is clearly repugnant, in words or purpose, to the old statute....' " Grindstone Butte Project v. Kleppe, 638 F.2d 100, 102 (9th Cir.), (quoting United States v. Georgia-Pacific Co., 421 F.2d 92, 102 (9th Cir.1970)), cert. denied, 454 U.S. 965, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981).
 
 
 11
 The second type of implicit repeal is inapplicable in the instant case because TAPAA does not cover the entire subject addressed by the Limitation Act. TAPAA establishes strict liability for damages caused by the transportation of trans-Alaska oil, while the Limitation Act operates generally to limit vessel owner liability. Therefore, resolution of the issue in this appeal rests on an analysis of the first category of repeals. We must determine whether TAPAA and the Limitation Act are in "irreconcilable conflict" with regard to the transportation of trans-Alaska oil. Radzanower, 426 U.S. at 154, 96 S.Ct. at 1993.
 
 
 12
 Trinidad does not argue that TAPAA and the Limitation Act are completely in harmony and capable of independent operation. Instead, Trinidad concedes that TAPAA irreconcilably conflicts with the Limitation Act to the extent of the owner's initial $14,000,000 of strict liability. Its position is that the $14,000,000 liability attaches regardless of the Limitation Act, but that thereafter the Limitation Act operates in full force. Under this theory, assuming that Trinidad qualifies for Limitation Act coverage, its liability in the instant case would be $14,000,000 plus the post-accident value of the Glacier Bay and any pending freight.
 
 
 13
 Trinidad's position that TAPAA only partially repeals the Limitation Act has general support, as it is clear that an implicit repeal need not be absolute. The Supreme Court has indicated that, " 'when two statutes are capable of coexistence, it is the duty of the courts ... to regard each as effective.' " Radzanower, 426 U.S. at 155, 96 S.Ct. at 1993 (quoting Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974)). Therefore, when two statutes are partially in conflict, "[r]epeal is to be regarded as implied only if necessary to make the [later enacted law] work, and even then only to the minimum extent necessary." Silver v. New York Stock Exchange, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963).
 
 
 14
 At the outset, we consider the effect of TAPAA's introductory paragraph. Section 1653(c)(1) prescribes that, "[n]otwithstanding the provisions of any other law," the owner of a vessel carrying trans-Alaska oil and the Fund "shall be strictly liable without regard to fault in accordance with the provisions of this subsection...." 43 U.S.C. § 1653(c)(1). Section 1653(c)(1) is the general statement of liability, and as such it introduces the subsequent subsections which contain TAPAA's operational details.
 
 
 15
 While some courts have found "notwithstanding" phrases to preempt explicitly the application of other laws, see, e.g., Complaint of Hokkaido Fisheries Co., Ltd., 506 F.Supp. 631, 634 (D.Alaska 1981) (holding that similar "notwithstanding" language in the Clean Water Act preempted application of Limitation Act to limit owner's liability for clean-up costs), we do not find the phrase dispositive in this case. In §§ 1653(c)(3) and (8), TAPAA refers to "other applicable" state or federal laws for the adjudication of claims in excess of $100,000,000 and of subrogation rights, respectively. 43 U.S.C. §§ 1653(c)(3), (8). The Limitation Act may be one of the other laws to which §§ 1653(c)(3) and (8) refer, and the "notwithstanding" phrase by itself sheds no light on whether the Limitation Act is one of these "other applicable" laws. Indeed, in practical terms, whether or not the Limitation Act is one of the "other applicable" laws is the important question in this appeal. If the Limitation Act applies to §§ 1653(c)(3) and (8), it would act to shield the vessel owner from any liability in excess of $14,000,000 plus the value of the vessel and pending freight. This is essentially Trinidad's position on appeal.
 
 
 16
 Because the "notwithstanding" phrase does not itself indicate whether Congress intended to repeal the Limitation Act, we must focus on the conflict between TAPAA and the Limitation Act. It is clear that TAPAA is a comprehensive liability scheme, which includes, as necessary elements, both strict liability and negligence principles. The vessel owner and the Fund must initially pay $100,000,000 of liability regardless of fault. This strict liability provision ensures that trans-Alaska oil spill victims receive prompt compensation without resort to prolonged litigation.
 
 
 17
 However, in TAPAA, Congress did not simply create a strict liability statute. Congress did not intend the owner and Fund to pay for damages caused by either the unseaworthiness of the vessel or negligence. It therefore included the subrogation section, allowing, for example, the Fund to seek reimbursement of its strict liability contribution from the owner in the event that owner negligence caused the spill. The effect of the subrogation section is clearly to provide those involved in the transportation of trans-Alaska oil an incentive to operate in a safe manner. TAPAA ensures that, in the end, liability for a trans-Alaska oil spill is placed on the party in the superior position to prevent the damage.
 
 
 18
 We are convinced that TAPAA's strict liability scheme is dependent on the subsequent negligence principles. TAPAA is intended to operate as a whole, not as independent parts. After an oil spill, innocent victims receive prompt compensation. Then, the parties involved with the transportation of the spilled oil and the Fund litigate fault. Ultimately, the costs of the spill are borne by the responsible party. Only in the event of a spill caused by, for example, an act of God, would the distribution of liability end with the initial strict liability payment. The comprehensive nature of TAPAA cannot be overemphasized.
 
 
 19
 With this understanding of TAPAA's scheme, we now come to a consideration of the Limitation Act. Simply stated, the Limitation Act is contrary to every goal of TAPAA. It allows vessel owners virtually to eliminate liability for catastrophic damages. Application of the Limitation Act to any aspect of TAPAA would frustrate completely TAPAA's comprehensive remedial nature. Congress, in enacting TAPAA, was clearly concerned about the ability of existing laws to compensate innocent victims of a disastrous trans-Alaska oil spill.[9] We can only conclude that TAPAA was designed to supersede any conflicting law; by TAPAA's nature, it was intended to become the controlling statute with regard to trans-Alaska oil. TAPAA's scheme, including both the strict liability and negligence principles, was intended to operate without limitation. Because this scheme is in irreconcilable conflict with the Limitation Act, we hold that TAPAA implicitly repealed the Limitation Act with regard to the transportation of trans-Alaska oil.
 
 
 20
 Our finding that TAPAA repealed the Limitation Act must be supported by the clear and manifest intent of Congress. Radzanower, 426 U.S. at 154, 96 S.Ct. at 1993. We find such intent in this case. There is no ambiguity as to the nature of the remedial scheme Congress enacted in TAPAA, and that scheme simply cannot work if the Limitation Act is allowed to operate concurrently. The Limitation Act is contrary to every aspect of TAPAA, and therefore, with regard to the transportation of trans-Alaska oil, it must be deemed implicitly repealed.
 
 CONCLUSION
 
 21
 The district court's dismissal of Trinidad's complaint pursuant to Fed.R.Civ.P. 12(b)(6) is affirmed.
 
 
 
 [1]
 The four appellants had different relationships to the Glacier Bay. Kee Leasing Company owned the tanker. Mathiasen's Tanker Industries, Inc., was a bareboat charterer. Glacier Bay Transportation Corp. was a sub-bareboat charterer. Trinidad Corporation, the Glacier Bay's operator, was a charter or owner pro hac vice
 
 
 [2]
 The claims have been consolidated in a district court action entitled In re Glacier Bay, Docket No. A88-115 (Civil), in the United States District Court for the District of Alaska
 
 
 [3]
 The district court did not reach the timeliness issue. In re Glacier Bay, 741 F.Supp. at 805
 
 
 [4]
 Subsequent to the submission of this appeal, certain settlement activity occurred between the parties. We directed the parties to file supplemental briefs addressing the potential mootness of the appeal. After a review of the briefs, we have concluded that the appeal is not moot
 
 
 [5]
 The Limitation Act's central provisions provide:
 (a) Privity or knowledge of owner; limitation. The liability of the owner of any vessel ... for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
 (b) Seagoing vessels; losses not covered in full. In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $420 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $420 per ton, to be available only for the payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.
 46 U.S.C.App. §§ 183(a), (b). The provision extending the Limitation Act's coverage to charterers provides:
 The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this Title relating to the limitation of the liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof.
 46 U.S.C.App. § 186.
 
 
 [6]
 In their admiralty treatise, Gilmore and Black note that the Limitation Act "has been attacked by many and defended by almost none." Gilmore & Black, The Laws of Admiralty, § 10-4(a) (2nd Ed.1975). They explain:
 The holding in the limitation cases which have been decided since the mid-1950's have, with a few exceptions, been adverse to the petitioning shipowner.... [T]he argument that the Limitation of Liability Act has served its time and should be repealed has become commonplace ... [The Limitation Act,] passed in an era before the corporation had become the standard form of business organization and before present forms of insurance protection ... were available, shows increasing signs of economic obsolescence.
 Id. Reflecting a similar sentiment, this court has referred to the Act as "a relic of an earlier era." Esta Later Charters, Inc. v. Ignacio, 875 F.2d 234, 239 (9th Cir.1989).
 
 
 [7]
 Section 1653(c) reads in pertinent part:
 (1) Notwithstanding the provisions of any other law, if oil that has been transported through the trans-Alaska pipeline is loaded on a vessel at the terminal facilities of the pipeline, the owner and operator of the vessel (jointly and severally) and the Trans-Alaska Pipeline Liability Fund established by this subsection, shall be strictly liable without regard to fault in accordance with the provisions of this subsection for all damages, including clean-up costs, sustained by any person or entity, public or private, including residents of Canada, as the result of discharges of oil from such vessel.
 (2) Strict liability shall not be imposed under this subsection if the owner or operator of the vessel, or the Fund, can prove that the damages were caused by an act of war or by the negligence of the United States or other governmental agency. Strict liability shall not be imposed under this subsection with respect to the claim of a damaged party if the owner or operator of the vessel, or the Fund, can prove that the damage was caused by the negligence of such party.
 (3) Strict liability for all claims arising out of any one incident shall not exceed $100,000,000. The owner and operator of the vessel shall be jointly and severally liable for the first $14,000,000 of such claims that are allowed. Financial responsibility for $14,000,000 shall be demonstrated in accordance with the provisions of section 311(p) of the Federal Water Pollution Control Act, as amended (33 U.S.C. 1321(p)) [33 USCS § 1321(p) ] before the oil is loaded. The Fund shall be liable for the balance of the claims that are allowed up to $100,000,000. If the total claims allowed exceed $100,000,000, they shall be reduced proportionately. The unpaid portion of any claim may be asserted and adjudicated under other applicable Federal or state law.
 43 U.S.C. § 1653(c).
 
 
 [8]
 Section 1653(c)(8) reads in pertinent part:
 In any case where liability without regard to fault is imposed pursuant to this subsection and the damages involved were caused by the unseaworthiness of the vessel or by negligence, the owner and operator of the vessel, and the Fund, as the case may be, shall be subrogated under applicable State and Federal laws to the rights under said laws of any person entitled to recover hereunder....
 43 U.S.C. § 1653(c)(8).
 
 
 [9]
 The Conference Report on TAPAA includes the following passage:
 Under the Limitation of Liability Act of 1851, the owner of vessel is entitled to limit his liability for property damage caused by the vessel.... It is therefore quite possible for injured parties to go uncompensated if a vessel and its cargo are totally lost.... [T]he Conferees concluded that existing maritime law would not provide adequate compensation to all victims ... in the event of the kind of catastrophe that might occur. Consequently, the Conferees established a rule of strict liability for damages from discharges of the oil transported through the Trans-Alaska Pipeline up to $100,000,000.
 H.R.Conf.Rep. No. 624, 93rd Cong., 1st Sess. 28-29 (1973), U.S.Code Cong. & Admin.News 1973, 2417, 2523, 2530.