UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 97-1321

IN THE MATTER OF: THE COMPLAINT OF
METLIFE CAPITAL CORP., ETC.,

Plaintiff - Appellant,



COMMONWEALTH OF PUERTO RICO, ET AL.,

Plaintiffs - Appellees,

v.

M/V EMILY S., ETC., ET AL.,

Defendants - Appellees.



No. 97-1322

IN THE MATTER OF: BUNKER GROUP, INC., ET AL.,

Plaintiffs - Appellants,



COMMONWEALTH OF PUERTO RICO, ET AL.,

Plaintiffs - Appellees,

v.

M/V EMILY S., ETC., ET AL.,

Defendants - Appellees.



APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Lynch, Circuit Judge, 

and Keeton,* District Judge. 



Michael Mirande, with whom Robert F. Bakemeier, Bogle & 
Gates P.L.L.C., Jos E. Alfaro-Delgado and Calvesbert, Alfaro & 
L pez-Conway were on brief for appellant Metlife Capital 
Corporation.
John M. Woods, with whom Andrew J. Garger, Thacher Proffitt 
& Wood, William A. Graffam, Patricia A. Garrity and Jim nez 
Graffam & Lausell were on brief for appellant Bunker Group, Inc. 
Mee Lon Lam, Trial Attorney, Torts Branch, Civil Division, 
U.S. Department of Justice, with whom Frank W. Hunger, Assistant 
Attorney General, Civil Division, and Guillermo Gil, United 
States Attorney, were on brief for appellee United States of
America.
Antonio J. Rodr guez, with whom Rice Fowler, Jos A. 
Fuentes-Agostini, Attorney General, Commonwealth of Puerto Rico, 
John F. Nevares and Smith & Nevares were on brief for appellee 
Commonwealth of Puerto Rico.



December 24, 1997


 

* Of the District of Massachusetts, sitting by designation.

-2-

TORRUELLA, Chief Judge. These two actions, TORRUELLA, Chief Judge. 

consolidated for appeal, challenge the district court's ruling

that the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. 2701-61,

repealed the Limitation of Shipowner's Liability Act of 1851

("Limitation Act"), 46 U.S.C. app. 181-96, as to oil spill

claims for removal costs and damages arising under the OPA. We

hold that claims arising under the OPA (for pollution removal

costs and damages) are not subject to the substantive or

procedural law of the Limitation Act or to the concursus of

claims under Rule F of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure ("Rule F").

I. BACKGROUND I. BACKGROUND

On January 7, 1994, the towing wire between the tug M/V

EMILY S and the barge MORRIS J. BERMAN parted, grounding the

barge off of Punta Escambr n, San Juan, Puerto Rico. The

grounding caused much of the MORRIS J. BERMAN's cargo of fuel oil

to spill into the waters of the Commonwealth of Puerto Rico (the

"Commonwealth"). Soon after the spill, the Commonwealth filed a

damages action in the United States District Court for the

District of Puerto Rico naming numerous defendants including: (i)

the demise charterer of the EMILY S Bunker Group, Inc. ("BGI");

(ii) the operator of the EMILY S Bunker Group Puerto Rico, Inc.

("BGPR"); (iii) the owner and operator of the MORRIS J. BERMAN

and the co-demise charterer of the EMILY S New England Marine

-3-

Services ("NEMS"); (iv) the owner of the EMILY S MetLife Capital

Corporation ("MetLife"); and (v) the EMILY S in rem. The 

Commonwealth arrested the EMILY S and sought damages under the

OPA, general federal maritime law, and Puerto Rico law.

Subsequently, several other civil actions were filed in the

District of Puerto Rico by private parties seeking recovery under

a variety of theories for damages. Each of these actions was

either consolidated with the Commonwealth's action or dismissed.

Within six months of the oil spill, the appellants

NEMS, BGI, and BGPR (collectively, the "Bunker Group") filed a

complaint under the Limitation Act and Rule F, seeking

exoneration from or limitation of liability. At the same time,

the appellant MetLife, as owner of the EMILY S, filed a separate

action under the Limitation Act. On August 25, 1994, the

district court issued a notice to claimants of the limitation

actions and an order of injunction, or monition, enjoining the

commencement of any actions against the limitation plaintiffs for

claims arising out of the grounding of the barge except for

actions filed in the limitation proceeding. The monition created

a concursus of all claims in a single consolidated proceeding.

NEMS, BGI, BGPR, and MetLife (the "Limitation Plaintiffs")

provided notice to actual claimants as well as to potential

claimants in a Notice of Monition in the newspaper El Nuevo D a 

on August 26, 1994, directing them to file their claims on or

before October 15, 1994.

At the conclusion of the monition period, the

-4-

Limitation Plaintiffs filed motions for entry of default against

all persons who failed to file. Subsequently, numerous

claimants, including the Commonwealth and the United States (the

"Government"), filed actions in the limitation proceedings,

seeking recovery of damages under the OPA, general maritime law,

and other law. In their claims, both the Commonwealth and the

Government asserted that their OPA claims should not be subject

to concursus.

Three other claimants, Hilton International of Puerto

Rico, Inc., Puerto Rico Tourism Company, and Hotel Development

Corporation (collectively, the "Hilton claimants"), filed claims

under seal in the limitation proceedings while their

administrative claims, which had already been filed with the

National Pollution Funds Center ("NPFC"), were pending. The

Hilton claimants simultaneously moved the district court for

relief in order to preserve their OPA claims if they withdrew

them from the concursus. On June 28, 1996, the district court

issued an order suspending the August 25, 1994 order of

injunction issued in the limitation proceedings. This order

allows "any claims for oil spill removal costs or damages

resulting from or in any way connected with the grounding of the

barge MORRIS J. BERMAN on January 7, 1994 to be asserted

independently of the limitation of liability proceedings."

Subsequent to the issuance of the order, the Hilton claimants

withdrew their limitation claims in order to proceed with their

administrative claims before the NPFC. However, their motions

-5-

served as the vehicle for all parties to brief the question now

presented to this court. On August 7, 1996, the appellants NEMS,

BGI, BGPR, and MetLife timely filed this appeal of the June 28,

1996 order.

-6-

II. DISCUSSION II. DISCUSSION

Interpretations of federal statutes and rules are

subject to de novo review. See Strickland v. Commissioner, Me. 

Dept. of Human Servs., 96 F.3d 542, 545 (1st Cir. 1996). 

A. The Limitation Act and the OPA A. The Limitation Act and the OPA

The Limitation Act was enacted in 1851 to promote

shipbuilding and to induce investment in the growing American

shipping industry. See Hartford Accident & Indem. Co. v. 

Southern Pac. Co., 273 U.S. 207 (1927). The law permits the 

shipowner to limit his or her liability as to certain claims for

damages arising out of the voyage of his or her vessel to the

post-accident value of the vessel plus pending freight. See 46 

U.S.C. 183, 186.

Rule F governs the filing and adjudication of a

limitation action. The vessel owner must file a complaint no

later than six months after receipt of a claim as well as

depositing the amount of the limitation fund with the court. See 

Rule F(1). Rule F concursus, once referred to as the "heart" of

a limitation action, Maryland Cas. Co. v. Cushing, 347 U.S. 409, 

417 (1954), requires multiple claimants to pursue relief in a

single forum and marshals the assets of a limited fund. See Rule 

F(3), F(7). Concursus is intended to provide a "prompt and

economical disposition to controversies." Cushing, 347 U.S. at 

415. Today, many question the continued usefulness and vitality

of the Limitation Act. See, e.g., 2 Thomas J. Schoenbaum, 

Admiralty and Maritime Law (2d ed. 1994) (the Limitation Act's 

-7-

"original purpose . . . seems to have lost much of its force with

the availability of insurance, bills of lading statutes that put

substantial limits on liability for cargo loss, and the ability

to limit claims by contract"). However, Congress has never

repealed the act, and therefore, courts continue to apply it.

See, e.g., Keller v. Jennette, 940 F. Supp. 35 (D. Mass. 1996). 

The Oil Pollution Act was passed in the wake of the

1989 Exxon Valdez tanker disaster and created a more

comprehensive compensation and liability scheme for oil spill

pollution than had existed under earlier legislation. Prior to

the OPA, the Federal Water Pollution Control Act ("FWPCA")

(commonly known as the Clean Water Act), 33 U.S.C. 1251-1387,

provided liability limitations for federal pollution removal

costs associated with oil spills. See id. 1321(c). The OPA 

imposes strict liability for pollution removal costs and damages

on the "responsible party" for a vessel or a facility from which

oil is discharged. See 33 U.S.C. 2702(a). Responsible parties 

include owners, operators, or demise charterers of a vessel. See 

id. 2701(32). 

The OPA limits the liability of responsible parties

based upon the type of vessel and its tonnage. For tank vessels,

the limit can be as high as $10 million. Id. 2704(a)(1). For 

all other vessels, the limit is the greater of $600 per gross ton

or $500,000. Id. 2704(a)(2). Responsible parties may face 

unlimited liability for, inter alia, acts of gross negligence or 

willful misconduct. In addition, state law applies free of these

-8-

liability limits. See id. 2718(a), 2718(b). Finally, the OPA 

consolidated previously established oil pollution funds into the

Oil Spill Liability Trust Fund (the "Fund"), which pays claims

brought under the OPA after they have first been presented to the

responsible party, if the responsible party is entitled to a

defense, or the liability limit under the statute has been

reached. See 33 U.S.C. 2708(a), 2713(b)(1)(B). See generally 

Schoenbaum, supra, at 384. 

B. The OPA's Impact on the Limitation Act B. The OPA's Impact on the Limitation Act

The OPA specifically addresses its relationship with

the Limitation Act and other legislation when it states:

Notwithstanding any other provision or 
rule of law, and subject to the 
provisions of this chapter, each
responsible party for a vessel or a
facility from which oil is discharged, or
which poses the substantial threat of a
discharge of oil, . . . is liable for the
removal costs and damages specified in
subsection (b) that result from such
incident.

33 U.S.C. 2702(a) (emphasis added). Appellant MetLife asserts

that this provision imposes the OPA's increased liability limits

notwithstanding any previously applicable limitations under the 

Limitation Act, but does not eviscerate preexisting limitation

procedure under the Limitation Act. Thus, the appellant argues, 

Limitation Act concursus remains available to responsible

parties.

However, a plain reading of the subsection suggests

that the OPA repealed the Limitation Act with respect to removal

cost and damages claims against responsible parties. See In re 

-9-

JAHRE SPRAY II K/S, 1996 WL 451315, *4 (D.N.J. 1996); accord In 

re Odin Marine Corp., No. 96-5438, slip op. at 6 (S.D.N.Y. Aug. 

7, 1997); Tug Capt. Fred Bouchard Corp. v. M/V BALSA 37, No. 93- 

1321, slip op. at 2 (M.D. Fla. Oct. 22, 1996). Accordingly, the

procedural rules incorporated into the Limitation Act are

inapplicable as well to such claims. In interpreting similar

language in the FWPCA, courts have held that the statute's

"notwithstanding" phrase precludes application of the Limitation

Act to claims by the United States for FWPCA pollution removal

costs. See In re Oswego Barge Corp., 664 F.2d 327, 340 (2d Cir. 

1981); In re Hokkaido Fisheries Co., Ltd., 506 F. Supp. 631, 643 

(D. Alaska 1981). See also Schoenbaum, supra, at 376 ("OPA 

broadly supersedes the Limitation of Liability Act with respect

to damages and removal costs under both federal and state law,

including common law"). We find these cases to be persuasive

because "[n]either the language of OPA nor its legislative

history suggests that OPA's provisions should be construed

contrary to the settled law applicable to FWPCA when OPA was

enacted." William M. Duncan, The Oil Pollution Act of 1990's

Effect on the Shipowner's Limitation of Liability Act, 5 U.S.F.

L. Rev. 303, 316 (1993).

In addition to the "notwithstanding" clause, at least

four other provisions in the statute explicitly repeal the

Limitation Act with respect to certain types of claims. See 33 

U.S.C. 2702(d)(1)(A) (repealing the Limitation Act as to third

parties solely responsible for a spill); 2718(a) (repealing the

-10-

Limitation Act as to state and local statutory remedies);

2718(c)(1) (repealing the Limitation Act as to additional

liability imposed by the United States, any state, or political

subdivision); 2718(c)(2) (repealing the Limitation Act as to

fines or penalties). The appellants contend that, outside of

these specific instances, the Limitation Act continues to apply

to the OPA. The Bunker Group, citing one commentator, notes that

"[i]f Congress' intent in enacting OPA had been to completely

repeal the Limitation Act, it would not have painstakingly

repealed it only with respect to certain types of actions."

Duncan, supra, at 319. 

When we consider these five OPA provisions which

explicitly repeal the Limitation Act as well as others that are

irreconcilably in conflict, see infra, we find that the OPA has 

repealed the Limitation Act as to oil spill pollution claims

arising under the OPA in the instant case. "'[W]here provisions

in the two acts are in irreconcilable conflict, the later act to

the extent of the conflict constitutes an implied repeal of the

earlier one . . . .'" See Radzanower v. Touche Ross & Co., 426 

U.S. 148, 154 (1976) (quoting Posadas v. National City Bank, 296 

U.S. 497, 503 (1936) (noting standard for repeal by

implication)). 

While the repeal of statutes by implication is

disfavored, see Tennessee Valley Auth. v. Hill, 437 U.S. 153, 189 

(1978), several key provisions of the two statutes are plainly

inconsistent. First, the Limitation Act limits the shipowner's

-11-

liability to the post-accident value of the vessel plus pending

freight, 46 U.S.C. 183, while the OPA contemplates a strict

liability regime with statutory limits of at least $2 million for

tanks vessels and $.5 million for all other vessels. 33 U.S.C.

2702, 2704. Moreover, in certain instances, the OPA imposes

virtually unlimited liability on the responsible party. See 33 

U.S.C. 2704(c). Second, the provisions on jurisdiction are in

obvious tension. Only federal courts have jurisdiction over

limitation proceedings. See, e.g., Complaint of Dammers & 

Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 755 

(2d Cir. 1988). In contrast, the OPA grants federal and state 

courts jurisdiction to decide oil pollution cases. 33 U.S.C.

2717(b), 2717(c). Finally, the provisions of Rule F, the

procedural rule that implements and which is incorporated into

the Limitation Act, cannot be reconciled with sections of the

OPA. See Part C, infra. 

Even assuming arguendo that the language is ambiguous, 

the legislative history is consistent with our interpretation.

As this court has noted, the "chief objective of statutory

interpretation is to give effect to legislative will."

Passamaquoddy Tribe v. State of Me., 75 F.3d 784 (1st Cir. 1996). 

In considering the OPA's liability provision, Congress stated:

Liability under this Act is established
notwithstanding any other provision or
rule of the law. This means that the
liability provisions of this Act would
govern limitations compensation for
removal costs and damages notwithstanding
any limitations under existing statutes
such as the act of March 3, 1851 . . . .

-12-

H.R. Conf. Rep. No. 101-653, at 103 (1990), reprinted in 1990 

U.S.C.C.A.N. 779, 781 (Joint Explanatory Statement of the

Conference Committee explaining 2702(a)). Furthermore, the

Senate Report on the OPA bill asserts that the OPA "completely

supersedes the 1851 statute with respect to oil pollution."

S. Rep. No. 101-94,at 14, reprinted in 1990U.S.C.C.A.N. 722, 736. 

More generally, as the Ninth Circuit reasoned in

finding an implicit repeal of the Limitation Act by the liability

provisions of the Trans-Alaska Pipeline Authorization Act, 43

U.S.C. 1651-1655, "[a]pplication of the Limitation Act to [the

OPA] would frustrate completely [the OPA]'s comprehensive

remedial nature." See In re Glacier Bay, 944 F.2d 577, 583 (9th 

Cir. 1991). "The purpose of OPA, as well as other remedial

legislation passed by Congress and the states to address

environmental disasters such as oil spills, was to encourage

rapid private party responses." JAHRE SPRAY, 1996 WL 451315, at 

*4. However, the Limitation Act "allows vessel owners virtually

to eliminate liability for catastrophic damages." Glacier Bay, 

944 F.2d at 583. Hence, the OPA's scheme is in irreconcilable

conflict with the Limitation Act.

Some claims arising from an incident in which oil

pollution occurs do not escape the Limitation Act. For example,

that Act remains in force for general maritime claims such as

maritime tort actions for harms to persons or vessels. See 33 

U.S.C. 2751(e) ("[e]xcept as otherwise provided in this

chapter, this chapter does not affect . . . admiralty and

-13-

maritime law"). The district court below, in keeping with the

OPA's savings provision in 2751(e), reserved the Limitation

Plaintiffs' right "to seek limitation of liability for those

claims subject to reduction under the Limitation Act."

Therefore, the Bunker Group's contention that the district

court's order exempts from Rule F concursus all claims arising

from the grounding, whether or not they arise under the OPA, is

without merit. The appellants remain free to avail themselves of

the Limitation Act and Rule F concursus for their non-OPA claims.

C. The Independent Application of Rule F Concursus C. The Independent Application of Rule F Concursus

The appellants claim that even if the OPA supersedes

the Limitation Act, because the OPA fails to provide any guidance

on the procedure necessary to implement it, Rule F concursus

applies to actions under the OPA independently of the Limitation

Act. To support their contention, the appellants note that Rule

F is framed generally to address "limitation of liability

pursuant to statute." Rule F(1). Rule F was originally written 

by the Supreme Court to implement the 1851 Limitation Act. In

redrafting the rules, the Supreme Court substituted a direct

reference to the 1851 statute in Rule F with the "pursuant to

statute" language, which we find reveals a more general purpose

for Rule F.

We conclude, however, that Rule F's requirements on

venue and limitation of liability cannot be reconciled with the

OPA's provisions regarding oil spill damages. Under Rule F, a

limitation of liability proceeding may be commenced only in the

-14-

district where the vessel has been seized, or if the vessel has

not been seized, in any district in which the owner has been

sued. See Rule F(9). If neither the vessel has been seized nor 

action commenced against the owner, the limitation action may be

filed in the district where the vessel may be. See id. Venue is 

proper in any district only if there is no pending litigation and

the vessel is not within any district. See id. Under the OPA, 

in contrast, venue is proper in any district in which the

discharge of oil or injury or damages occurred, or in which the

defendant resides, may be found, has its principal office, or has

appointed an agent for service of process. 33 U.S.C. 2717(b).

Thus, the OPA offers claimants a much broader choice of forums

while Rule F's venue requirements are significantly more

restrictive.

Rule F's deadline for claims is also inconsistent with

the OPA's statute of limitation. Once a limitation action is

commenced, the court issues a notice to claimants requiring them

to file their claims by the date fixed in the notice. See Rule 

F(4). The court may fix a date that requires claims to be filed

in as little as 30 days after issuance of the notice. Id. In 

the instant case, the monition period terminated approximately

ten months after the date of the MORRIS J. BERMAN's grounding.

The OPA, however, allows claimants three years to commence an

action to recover removal costs and damages. See 33 U.S.C.  

2717(f)(1), 2717(f)(2). In addition, if the claimant decides to

seek recovery from the Fund, the claimant has six years to

-15-

present removal costs claims, see 33 U.S.C. 2712(h)(1), and 

three years to present damage claims. See id. 2712(h)(2). 

Finally, section 2717(f)(4) extends the limitation period for

subrogation actions by three years from the date the Fund pays a

subrogated claim. See 33 U.S.C. 2717(f)(4). 

One concern we have with the shortened claims period

under Rule F is that it would interfere with the United States'

subrogation rights under the OPA. If oil spill claims are

subject to Rule F concursus, claimants who are barred by the

court imposed deadline from recovering against the responsible

party, are likely to present their claims to the Fund. Once the

Fund pays a claim, the United States acquires all rights of

subrogation. See 33 U.S.C. 2712(f), 2713, 2715(a). However, 

at that point, the United States may then be denied access to the

proceedings against the responsible party, and consequently, the

Fund will bear the financial burden of these late claims.

The appellants respond that, under Rule F, the

government's subrogation rights do not necessarily lapse because

"[f]or cause shown, the court may enlarge the time within which

claims may be filed." Rule F(4). We believe though that

subjecting the government's subrogation rights to the discretion

of the trial court in every oil spill action fails to adequately

secure those rights. Congress specifically examined this issue

in creating the OPA's statute of limitation and giving the courts

discretion over this matter is contrary to legislative intent.

Moreover, even if the courts consistently enlarge the monition

-16-

period for subrogation claims, in many instances, the limited

fund established by the concursus procedure will already have

been exhausted.

Finally, contrary to the appellants' contention that

the OPA fails to provide any procedural guidance, the OPA does 

establish a claims procedure. The OPA requires all claims for

removal costs or damages to be presented first to the responsible

party or guarantor. See 33 U.S.C. 2713(a). If the responsible 

party denies liability or the claim is not settled within 90

days, the claimant may proceed against the responsible party in

court or present the claim to the Fund. See id. 2713(c). In 

some enumerated instances, claims may be presented directly to

the Fund without first presenting them to the responsible party.

See id. 2713(b). "The purpose of the claim presentation 

procedure is to promote settlement and avoid litigation."

Johnson v. Colonial Pipeline Co., 830 F. Supp. 309, 310 (E.D. Va. 

1993). In contrast to the OPA's claims procedure, Rule F forces

all claimants into litigation against the vessel owner. If a

claimant fails to appear in the limitation action within the

monition period, he or she is enjoined from raising any claims.

See Rule F(3). In view of these inconsistencies, we conclude 

that Rule F concursus even if independent of the Limitation Act

is inapplicable to OPA claims.

III. CONCLUSION III. CONCLUSION

For the reasons stated in this opinion, the district

-17-

court's order is affirmed. affirmed. 

Costs to be assessed against appellants.

-18-