USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1321 IN THE MATTER OF: THE COMPLAINT OF METLIFE CAPITAL CORP., ETC., Plaintiff - Appellant, ____________________ COMMONWEALTH OF PUERTO RICO, ET AL., Plaintiffs - Appellees, v. M/V EMILY S., ETC., ET AL., Defendants - Appellees. ____________________ No. 97-1322 IN THE MATTER OF: BUNKER GROUP, INC., ET AL., Plaintiffs - Appellants, ____________________ COMMONWEALTH OF PUERTO RICO, ET AL., Plaintiffs - Appellees, v. M/V EMILY S., ETC., ET AL., Defendants - Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Lynch, Circuit Judge, _____________ and Keeton,* District Judge. ______________ _____________________ Michael Mirande, with whom Robert F. Bakemeier, Bogle & ________________ _____________________ ________ Gates P.L.L.C., Jos E. Alfaro-Delgado and Calvesbert, Alfaro & ______________ _______________________ _____________________ L pez-Conway were on brief for appellant Metlife Capital ____________ Corporation. John M. Woods, with whom Andrew J. Garger, Thacher Proffitt _____________ ________________ ________________ & Wood, William A. Graffam, Patricia A. Garrity and Jim nez ______ ___________________ ____________________ _______ Graffam & Lausell were on brief for appellant Bunker Group, Inc. _________________ Mee Lon Lam, Trial Attorney, Torts Branch, Civil Division, ___________ U.S. Department of Justice, with whom Frank W. Hunger, Assistant _______________ Attorney General, Civil Division, and Guillermo Gil, United ______________ States Attorney, were on brief for appellee United States of America. Antonio J. Rodr guez, with whom Rice Fowler, Jos A. ______________________ ____________ ________ Fuentes-Agostini, Attorney General, Commonwealth of Puerto Rico, ________________ John F. Nevares and Smith & Nevares were on brief for appellee ________________ ________________ Commonwealth of Puerto Rico. ____________________ December 24, 1997 ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. -2- TORRUELLA, Chief Judge. These two actions, TORRUELLA, Chief Judge. _____________ consolidated for appeal, challenge the district court's ruling that the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. 2701-61, repealed the Limitation of Shipowner's Liability Act of 1851 ("Limitation Act"), 46 U.S.C. app. 181-96, as to oil spill claims for removal costs and damages arising under the OPA. We hold that claims arising under the OPA (for pollution removal costs and damages) are not subject to the substantive or procedural law of the Limitation Act or to the concursus of claims under Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule F"). I. BACKGROUND I. BACKGROUND On January 7, 1994, the towing wire between the tug M/V EMILY S and the barge MORRIS J. BERMAN parted, grounding the barge off of Punta Escambr n, San Juan, Puerto Rico. The grounding caused much of the MORRIS J. BERMAN's cargo of fuel oil to spill into the waters of the Commonwealth of Puerto Rico (the "Commonwealth"). Soon after the spill, the Commonwealth filed a damages action in the United States District Court for the District of Puerto Rico naming numerous defendants including: (i) the demise charterer of the EMILY S Bunker Group, Inc. ("BGI"); (ii) the operator of the EMILY S Bunker Group Puerto Rico, Inc. ("BGPR"); (iii) the owner and operator of the MORRIS J. BERMAN and the co-demise charterer of the EMILY S New England Marine -3- Services ("NEMS"); (iv) the owner of the EMILY S MetLife Capital Corporation ("MetLife"); and (v) the EMILY S in rem. The __ ___ Commonwealth arrested the EMILY S and sought damages under the OPA, general federal maritime law, and Puerto Rico law. Subsequently, several other civil actions were filed in the District of Puerto Rico by private parties seeking recovery under a variety of theories for damages. Each of these actions was either consolidated with the Commonwealth's action or dismissed. Within six months of the oil spill, the appellants NEMS, BGI, and BGPR (collectively, the "Bunker Group") filed a complaint under the Limitation Act and Rule F, seeking exoneration from or limitation of liability. At the same time, the appellant MetLife, as owner of the EMILY S, filed a separate action under the Limitation Act. On August 25, 1994, the district court issued a notice to claimants of the limitation actions and an order of injunction, or monition, enjoining the commencement of any actions against the limitation plaintiffs for claims arising out of the grounding of the barge except for actions filed in the limitation proceeding. The monition created a concursus of all claims in a single consolidated proceeding. NEMS, BGI, BGPR, and MetLife (the "Limitation Plaintiffs") provided notice to actual claimants as well as to potential claimants in a Notice of Monition in the newspaper El Nuevo D a _____________ on August 26, 1994, directing them to file their claims on or before October 15, 1994. At the conclusion of the monition period, the -4- Limitation Plaintiffs filed motions for entry of default against all persons who failed to file. Subsequently, numerous claimants, including the Commonwealth and the United States (the "Government"), filed actions in the limitation proceedings, seeking recovery of damages under the OPA, general maritime law, and other law. In their claims, both the Commonwealth and the Government asserted that their OPA claims should not be subject to concursus. Three other claimants, Hilton International of Puerto Rico, Inc., Puerto Rico Tourism Company, and Hotel Development Corporation (collectively, the "Hilton claimants"), filed claims under seal in the limitation proceedings while their administrative claims, which had already been filed with the National Pollution Funds Center ("NPFC"), were pending. The Hilton claimants simultaneously moved the district court for relief in order to preserve their OPA claims if they withdrew them from the concursus. On June 28, 1996, the district court issued an order suspending the August 25, 1994 order of injunction issued in the limitation proceedings. This order allows "any claims for oil spill removal costs or damages resulting from or in any way connected with the grounding of the barge MORRIS J. BERMAN on January 7, 1994 to be asserted independently of the limitation of liability proceedings." Subsequent to the issuance of the order, the Hilton claimants withdrew their limitation claims in order to proceed with their administrative claims before the NPFC. However, their motions -5- served as the vehicle for all parties to brief the question now presented to this court. On August 7, 1996, the appellants NEMS, BGI, BGPR, and MetLife timely filed this appeal of the June 28, 1996 order. -6- II. DISCUSSION II. DISCUSSION Interpretations of federal statutes and rules are subject to de novo review. See Strickland v. Commissioner, Me. __ ____ ___ __________ _________________ Dept. of Human Servs., 96 F.3d 542, 545 (1st Cir. 1996). _____________________ A. The Limitation Act and the OPA A. The Limitation Act and the OPA The Limitation Act was enacted in 1851 to promote shipbuilding and to induce investment in the growing American shipping industry. See Hartford Accident & Indem. Co. v. ___ _________________________________ Southern Pac. Co., 273 U.S. 207 (1927). The law permits the __________________ shipowner to limit his or her liability as to certain claims for damages arising out of the voyage of his or her vessel to the post-accident value of the vessel plus pending freight. See 46 ___ U.S.C. 183, 186. Rule F governs the filing and adjudication of a limitation action. The vessel owner must file a complaint no later than six months after receipt of a claim as well as depositing the amount of the limitation fund with the court. See ___ Rule F(1). Rule F concursus, once referred to as the "heart" of a limitation action, Maryland Cas. Co. v. Cushing, 347 U.S. 409, __________________ _______ 417 (1954), requires multiple claimants to pursue relief in a single forum and marshals the assets of a limited fund. See Rule ___ F(3), F(7). Concursus is intended to provide a "prompt and economical disposition to controversies." Cushing, 347 U.S. at _______ 415. Today, many question the continued usefulness and vitality of the Limitation Act. See, e.g., 2 Thomas J. Schoenbaum, ___ ____ Admiralty and Maritime Law (2d ed. 1994) (the Limitation Act's ___________________________ -7- "original purpose . . . seems to have lost much of its force with the availability of insurance, bills of lading statutes that put substantial limits on liability for cargo loss, and the ability to limit claims by contract"). However, Congress has never repealed the act, and therefore, courts continue to apply it. See, e.g., Keller v. Jennette, 940 F. Supp. 35 (D. Mass. 1996). ___ ____ ______ ________ The Oil Pollution Act was passed in the wake of the 1989 Exxon Valdez tanker disaster and created a more comprehensive compensation and liability scheme for oil spill pollution than had existed under earlier legislation. Prior to the OPA, the Federal Water Pollution Control Act ("FWPCA") (commonly known as the Clean Water Act), 33 U.S.C. 1251-1387, provided liability limitations for federal pollution removal costs associated with oil spills. See id. 1321(c). The OPA ___ __ imposes strict liability for pollution removal costs and damages on the "responsible party" for a vessel or a facility from which oil is discharged. See 33 U.S.C. 2702(a). Responsible parties ___ include owners, operators, or demise charterers of a vessel. See ___ id. 2701(32). __ The OPA limits the liability of responsible parties based upon the type of vessel and its tonnage. For tank vessels, the limit can be as high as $10 million. Id. 2704(a)(1). For __ all other vessels, the limit is the greater of $600 per gross ton or $500,000. Id. 2704(a)(2). Responsible parties may face __ unlimited liability for, inter alia, acts of gross negligence or _____ ____ willful misconduct. In addition, state law applies free of these -8- liability limits. See id. 2718(a), 2718(b). Finally, the OPA ___ __ consolidated previously established oil pollution funds into the Oil Spill Liability Trust Fund (the "Fund"), which pays claims brought under the OPA after they have first been presented to the responsible party, if the responsible party is entitled to a defense, or the liability limit under the statute has been reached. See 33 U.S.C. 2708(a), 2713(b)(1)(B). See generally ___ ___ _________ Schoenbaum, supra, at 384. _____ B. The OPA's Impact on the Limitation Act B. The OPA's Impact on the Limitation Act The OPA specifically addresses its relationship with the Limitation Act and other legislation when it states: Notwithstanding any other provision or _________________________________________ rule of law, and subject to the ______________ provisions of this chapter, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, . . . is liable for the removal costs and damages specified in subsection (b) that result from such incident. 33 U.S.C. 2702(a) (emphasis added). Appellant MetLife asserts that this provision imposes the OPA's increased liability limits notwithstanding any previously applicable limitations under the ___________ Limitation Act, but does not eviscerate preexisting limitation procedure under the Limitation Act. Thus, the appellant argues, _________ Limitation Act concursus remains available to responsible parties. However, a plain reading of the subsection suggests that the OPA repealed the Limitation Act with respect to removal cost and damages claims against responsible parties. See In re ___ _____ -9- JAHRE SPRAY II K/S, 1996 WL 451315, *4 (D.N.J. 1996); accord In __________________ ______ __ re Odin Marine Corp., No. 96-5438, slip op. at 6 (S.D.N.Y. Aug. _____________________ 7, 1997); Tug Capt. Fred Bouchard Corp. v. M/V BALSA 37, No. 93- _____________________________ ____________ 1321, slip op. at 2 (M.D. Fla. Oct. 22, 1996). Accordingly, the procedural rules incorporated into the Limitation Act are inapplicable as well to such claims. In interpreting similar language in the FWPCA, courts have held that the statute's "notwithstanding" phrase precludes application of the Limitation Act to claims by the United States for FWPCA pollution removal costs. See In re Oswego Barge Corp., 664 F.2d 327, 340 (2d Cir. ___ ________________________ 1981); In re Hokkaido Fisheries Co., Ltd., 506 F. Supp. 631, 643 __________________________________ (D. Alaska 1981). See also Schoenbaum, supra, at 376 ("OPA _________ __________ _____ broadly supersedes the Limitation of Liability Act with respect to damages and removal costs under both federal and state law, including common law"). We find these cases to be persuasive because "[n]either the language of OPA nor its legislative history suggests that OPA's provisions should be construed contrary to the settled law applicable to FWPCA when OPA was enacted." William M. Duncan, The Oil Pollution Act of 1990's Effect on the Shipowner's Limitation of Liability Act, 5 U.S.F. L. Rev. 303, 316 (1993). In addition to the "notwithstanding" clause, at least four other provisions in the statute explicitly repeal the Limitation Act with respect to certain types of claims. See 33 ___ U.S.C. 2702(d)(1)(A) (repealing the Limitation Act as to third parties solely responsible for a spill); 2718(a) (repealing the -10- Limitation Act as to state and local statutory remedies); 2718(c)(1) (repealing the Limitation Act as to additional liability imposed by the United States, any state, or political subdivision); 2718(c)(2) (repealing the Limitation Act as to fines or penalties). The appellants contend that, outside of these specific instances, the Limitation Act continues to apply to the OPA. The Bunker Group, citing one commentator, notes that "[i]f Congress' intent in enacting OPA had been to completely repeal the Limitation Act, it would not have painstakingly repealed it only with respect to certain types of actions." Duncan, supra, at 319. _____ When we consider these five OPA provisions which explicitly repeal the Limitation Act as well as others that are irreconcilably in conflict, see infra, we find that the OPA has ___ _____ repealed the Limitation Act as to oil spill pollution claims arising under the OPA in the instant case. "'[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one . . . .'" See Radzanower v. Touche Ross & Co., 426 ___ __________ __________________ U.S. 148, 154 (1976) (quoting Posadas v. National City Bank, 296 _______ __________________ U.S. 497, 503 (1936) (noting standard for repeal by implication)).  While the repeal of statutes by implication is disfavored, see Tennessee Valley Auth. v. Hill, 437 U.S. 153, 189 ___ ______________________ ____ (1978), several key provisions of the two statutes are plainly inconsistent. First, the Limitation Act limits the shipowner's -11- liability to the post-accident value of the vessel plus pending freight, 46 U.S.C. 183, while the OPA contemplates a strict liability regime with statutory limits of at least $2 million for tanks vessels and $.5 million for all other vessels. 33 U.S.C. 2702, 2704. Moreover, in certain instances, the OPA imposes virtually unlimited liability on the responsible party. See 33 ___ U.S.C. 2704(c). Second, the provisions on jurisdiction are in obvious tension. Only federal courts have jurisdiction over limitation proceedings. See, e.g., Complaint of Dammers & ___ ____ _________________________ Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 755 ______________________________________________ (2d Cir. 1988). In contrast, the OPA grants federal and state _________ courts jurisdiction to decide oil pollution cases. 33 U.S.C. 2717(b), 2717(c). Finally, the provisions of Rule F, the procedural rule that implements and which is incorporated into the Limitation Act, cannot be reconciled with sections of the OPA. See Part C, infra. ___ _____ Even assuming arguendo that the language is ambiguous, ________ the legislative history is consistent with our interpretation. As this court has noted, the "chief objective of statutory interpretation is to give effect to legislative will." Passamaquoddy Tribe v. State of Me., 75 F.3d 784 (1st Cir. 1996). ___________________ ____________ In considering the OPA's liability provision, Congress stated: Liability under this Act is established notwithstanding any other provision or rule of the law. This means that the liability provisions of this Act would govern limitations compensation for removal costs and damages notwithstanding any limitations under existing statutes such as the act of March 3, 1851 . . . . -12- H.R. Conf. Rep. No. 101-653, at 103 (1990), reprinted in 1990 _____________ U.S.C.C.A.N. 779, 781 (Joint Explanatory Statement of the Conference Committee explaining 2702(a)). Furthermore, the Senate Report on the OPA bill asserts that the OPA "completely supersedes the 1851 statute with respect to oil pollution." S. Rep. No. 101-94,at 14, reprinted in 1990U.S.C.C.A.N. 722, 736. ____________ More generally, as the Ninth Circuit reasoned in finding an implicit repeal of the Limitation Act by the liability provisions of the Trans-Alaska Pipeline Authorization Act, 43 U.S.C. 1651-1655, "[a]pplication of the Limitation Act to [the OPA] would frustrate completely [the OPA]'s comprehensive remedial nature." See In re Glacier Bay, 944 F.2d 577, 583 (9th ___ __________________ Cir. 1991). "The purpose of OPA, as well as other remedial legislation passed by Congress and the states to address environmental disasters such as oil spills, was to encourage rapid private party responses." JAHRE SPRAY, 1996 WL 451315, at ___________ *4. However, the Limitation Act "allows vessel owners virtually to eliminate liability for catastrophic damages." Glacier Bay, ___________ 944 F.2d at 583. Hence, the OPA's scheme is in irreconcilable conflict with the Limitation Act. Some claims arising from an incident in which oil pollution occurs do not escape the Limitation Act. For example, that Act remains in force for general maritime claims such as maritime tort actions for harms to persons or vessels. See 33 ___ U.S.C. 2751(e) ("[e]xcept as otherwise provided in this chapter, this chapter does not affect . . . admiralty and -13- maritime law"). The district court below, in keeping with the OPA's savings provision in 2751(e), reserved the Limitation Plaintiffs' right "to seek limitation of liability for those claims subject to reduction under the Limitation Act." Therefore, the Bunker Group's contention that the district court's order exempts from Rule F concursus all claims arising from the grounding, whether or not they arise under the OPA, is without merit. The appellants remain free to avail themselves of the Limitation Act and Rule F concursus for their non-OPA claims. C. The Independent Application of Rule F Concursus C. The Independent Application of Rule F Concursus The appellants claim that even if the OPA supersedes the Limitation Act, because the OPA fails to provide any guidance on the procedure necessary to implement it, Rule F concursus applies to actions under the OPA independently of the Limitation Act. To support their contention, the appellants note that Rule F is framed generally to address "limitation of liability pursuant to statute." Rule F(1). Rule F was originally written _______ by the Supreme Court to implement the 1851 Limitation Act. In redrafting the rules, the Supreme Court substituted a direct reference to the 1851 statute in Rule F with the "pursuant to statute" language, which we find reveals a more general purpose for Rule F. We conclude, however, that Rule F's requirements on venue and limitation of liability cannot be reconciled with the OPA's provisions regarding oil spill damages. Under Rule F, a limitation of liability proceeding may be commenced only in the -14- district where the vessel has been seized, or if the vessel has not been seized, in any district in which the owner has been sued. See Rule F(9). If neither the vessel has been seized nor ___ action commenced against the owner, the limitation action may be filed in the district where the vessel may be. See id. Venue is ___ __ proper in any district only if there is no pending litigation and the vessel is not within any district. See id. Under the OPA, ___ __ in contrast, venue is proper in any district in which the discharge of oil or injury or damages occurred, or in which the defendant resides, may be found, has its principal office, or has appointed an agent for service of process. 33 U.S.C. 2717(b). Thus, the OPA offers claimants a much broader choice of forums while Rule F's venue requirements are significantly more restrictive. Rule F's deadline for claims is also inconsistent with the OPA's statute of limitation. Once a limitation action is commenced, the court issues a notice to claimants requiring them to file their claims by the date fixed in the notice. See Rule ___ F(4). The court may fix a date that requires claims to be filed in as little as 30 days after issuance of the notice. Id. In __ the instant case, the monition period terminated approximately ten months after the date of the MORRIS J. BERMAN's grounding. The OPA, however, allows claimants three years to commence an action to recover removal costs and damages. See 33 U.S.C.  ___ 2717(f)(1), 2717(f)(2). In addition, if the claimant decides to seek recovery from the Fund, the claimant has six years to -15- present removal costs claims, see 33 U.S.C. 2712(h)(1), and ___ three years to present damage claims. See id. 2712(h)(2). ___ __ Finally, section 2717(f)(4) extends the limitation period for subrogation actions by three years from the date the Fund pays a subrogated claim. See 33 U.S.C. 2717(f)(4). ___ One concern we have with the shortened claims period under Rule F is that it would interfere with the United States' subrogation rights under the OPA. If oil spill claims are subject to Rule F concursus, claimants who are barred by the court imposed deadline from recovering against the responsible party, are likely to present their claims to the Fund. Once the Fund pays a claim, the United States acquires all rights of subrogation. See 33 U.S.C. 2712(f), 2713, 2715(a). However, ___ at that point, the United States may then be denied access to the proceedings against the responsible party, and consequently, the Fund will bear the financial burden of these late claims. The appellants respond that, under Rule F, the government's subrogation rights do not necessarily lapse because "[f]or cause shown, the court may enlarge the time within which claims may be filed." Rule F(4). We believe though that subjecting the government's subrogation rights to the discretion of the trial court in every oil spill action fails to adequately secure those rights. Congress specifically examined this issue in creating the OPA's statute of limitation and giving the courts discretion over this matter is contrary to legislative intent. Moreover, even if the courts consistently enlarge the monition -16- period for subrogation claims, in many instances, the limited fund established by the concursus procedure will already have been exhausted. Finally, contrary to the appellants' contention that the OPA fails to provide any procedural guidance, the OPA does ___ establish a claims procedure. The OPA requires all claims for removal costs or damages to be presented first to the responsible party or guarantor. See 33 U.S.C. 2713(a). If the responsible ___ party denies liability or the claim is not settled within 90 days, the claimant may proceed against the responsible party in court or present the claim to the Fund. See id. 2713(c). In ___ __ some enumerated instances, claims may be presented directly to the Fund without first presenting them to the responsible party. See id. 2713(b). "The purpose of the claim presentation ___ __ procedure is to promote settlement and avoid litigation." Johnson v. Colonial Pipeline Co., 830 F. Supp. 309, 310 (E.D. Va. _______ _____________________ 1993). In contrast to the OPA's claims procedure, Rule F forces all claimants into litigation against the vessel owner. If a claimant fails to appear in the limitation action within the monition period, he or she is enjoined from raising any claims. See Rule F(3). In view of these inconsistencies, we conclude ___ that Rule F concursus even if independent of the Limitation Act is inapplicable to OPA claims. III. CONCLUSION III. CONCLUSION For the reasons stated in this opinion, the district -17- court's order is affirmed. affirmed. ________ Costs to be assessed against appellants. -18-